**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re D.S.,* Slip Opinion No. 2016-Ohio-7369.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-7369

IN RE D.S.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re D.S.,* Slip Opinion No. 2016-Ohio-7369.]**

*Juvenile delinquency—Judges must grant confinement credit under R.C. 2152.18(B) if the confinement stems from an original complaint and is sufficiently linked to adjudication of the charges upon which juvenile court orders commitment—Entire period that appellant was confined pending disposition was "in connection with" delinquent-child complaint upon which order of commitment is based—Court of appeals' judgment reversed and cause remanded.*

(No. 2015-0505—Submitted April 5, 2016—Decided October 19, 2016.)

APPEAL from the Court of Appeals for Cuyahoga County,

No. 101161, 2015-Ohio-518.

_____

**O'CONNOR, C.J.**

**{¶ 1}** In this appeal, we address whether R.C. 2152.18(B) requires a juvenile court to credit the days a juvenile has been held in confinement pending disposition of a delinquency charge against the term of confinement the court imposes on the juvenile for that charge at final disposition. We hold that the plain language of the statute mandates that predisposition confinement be credited to the juvenile, and accordingly, we reverse the judgment of the court of appeals. We remand this cause to the juvenile court for further proceedings consistent with this opinion, including an instruction to calculate the days appellant, D.S., was held pending disposition of the charges against him and to award him credit for those days.

## RELEVANT BACKGROUND

**{¶ 2}** On May 14, 2013, the state filed a complaint against D.S. in the Cuyahoga County Juvenile Court. The complaint alleged that D.S., then 17 years old, was delinquent for two counts of aggravated robbery, a violation of R.C. 2911.01(A)(1) if committed by an adult, each with two firearm specifications, violations of R.C. 2941.141(A) and 2941.145(A) if committed by an adult. All the charges arose from a single incident in which D.S. approached a couple about to enter their home, brandished a firearm, and robbed them of their possessions.

**{¶ 3}** At his initial appearance in juvenile court on May 20, 2013, the magistrate ordered that D.S. be remanded to the juvenile-detention facility. Following additional hearings on May 31 and June 17, 2013, the judge continued to remand D.S. to detention.

**{¶ 4}** On July 26, 2013, the juvenile court judge held a hearing, found probable cause to believe that D.S. had committed the offenses charged in the complaint, and transferred the matter to the general division of the Cuyahoga County Court of Common Pleas. The juvenile court judge again remanded D.S. to the juvenile-detention facility, imposing a $50,000 bond for his release. D.S.

remained in juvenile detention until a juvenile court magistrate ordered his transfer to the county's jail on December 27, 2013.

{¶ 5} The criminal case against D.S. proceeded in common pleas court, where D.S. was charged with two counts of kidnapping in addition to two counts of aggravated robbery, with the same two firearm specifications accompanying each of the four charges. But soon after the transfer to common pleas court, the state moved to dismiss the indictment because the state and D.S. had reached an agreement that would resolve the case: the state had agreed to dismiss the case against D.S. in common pleas court in exchange for D.S.'s pleading delinquent in juvenile court to a single count of robbery with an accompanying three-year firearm specification and an agreed-to recommendation of a two-year commitment. The common pleas court judge granted the motion to dismiss and ordered D.S. transferred from the county jail back to the juvenile-detention facility.

{¶ 6} Three days later, D.S. appeared in juvenile court before the judge who had presided over the case in juvenile court. The juvenile court judge conducted an adjudicatory hearing pursuant to Juv.R. 29 and accepted D.S.'s admission to the single charge of robbery with the three-year firearm specification. In doing so, the judge characterized the case before her as "a refiling, an amended filing of what was originally filed before this Court on May 14th of 2013 in Case Number DL 13106887." And the judge noted that she had conducted a probable-cause hearing in the case and recalled the testimony of one of the victims.

{¶ 7} During the disposition portion of the hearing, the state asserted that it would "be satisfied" with D.S.'s being ordered to a two-year commitment to the Department of Youth Services ("DYS"). Counsel for D.S. asked the juvenile court judge to accept the state's recommendation. The judge then proceeded to disposition "in Case Number DL 14102017 along with DL 13111625"—i.e., the case as it had been filed initially in juvenile court (No. DL 1311625) and the case after it returned from common pleas court (No. DL 14102017). She imposed a

commitment to DYS for a minimum of one year for the robbery charge and a consecutive one-year term for the firearm specification.

{¶ 8} The judge then immediately stated, "Zero precommitment days are ordered. Warrant to convey is issued. I'm not giving him any time. That's a new charge." She continued, "I will not be giving him any credit for the other case. * * * That's two full years." At that point, D.S., his mother, and defense counsel interjected, all indicating that they understood "the deal" to include credit for the time that D.S. had served pending disposition.

{¶ 9} The following exchange then occurred:

THE COURT: Is this not a new charge? Is it not an amended charge? Did I ever touch this charge?

ASSISTANT PROSECUTING ATTORNEY: If I may, Judge. You did indicate it was a reindictment of a prior delinquency.

THE COURT: It was an amended complaint that was transferred. This is a new charge. Now, you want precommitment credit, too?

ASSISTANT PROSECUTING ATTORNEY: The State is not opposed to the precommitment credit, Judge.

THE COURT: Noted. How many days because right now I'm at zero?

DEFENSE COUNSEL: Well, he's been in custody on this case—

THE COURT: No. Not on this case, on a different case.

DEFENSE COUNSEL: No. On May 22nd he was arrested on this warrant and committed on this—

THE COURT: I never issued a warrant in this case.

DEFENSE COUNSEL: Well, he's been on—and that was the agreement.

ASSISTANT PROSECUTING ATTORNEY: Judge, we would ask that you give him the credit for the time that he served on the prior indictment. This is a reindictment, and it was understood by the parties that he would be committed for a holistic two-year sentence and that he would get credit for the time that he's been in.

THE COURT: But you didn't say that, did you?

ASSISTANT PROSECUTING ATTORNEY: I apologize.

THE COURT: I know. Zero precommitment days, warrant to convey, and you can file your appeal. We're off the record.

DEFENSE COUNSEL: We're going to move right now to vacate the plea. Because of the understanding—it was my understanding, I advised my client that he would get credit for time served because it's the same case, okay? So now the whole deal falls apart unless you are willing to give the credit for time served that he's been serving on this particular matter, okay?

ASSISTANT PROSECUTING ATTORNEY: Judge, I apologize if we did not make that clear at sidebar when we were discussing this being a reindictment of the case. It was the State's understanding that you would give him credit for the time that he was in on that original case because it's the same facts and circumstances. So it wasn't an intent to mislead the Court. We just thought that was going to happen because of the two-year recommended sentence.

THE COURT: But you said a two-year recommended sentence. You didn't say a two-year recommended sentence with so many precommitment day credits. This is a new case for me.

ASSISTANT PROSECUTING ATTORNEY:  Again, and I understand and I apologize having not worked in front of you very often, Judge.  We understood it was a reindictment of the old offense or the other delinquency matter.  So I thought, again, when we discussed this, that we understood he was going to be going to ODYS for two years.  He would get credit for the time he's been in, and the victims also were aware of that.  And we understood he was going to be in for another 16 months minimum.  And we were okay with that, Judge.

\* \* \*

THE COURT:  How many days are you looking at because I'm still at zero?

\* \* \*

ASSISTANT PROSECUTING ATTORNEY:  So he's been in for almost nine months, I believe, as of today.

DEFENSE COUNSEL:  Yes.  And a lot of that was in County Jail by the way.

ASSISTANT PROSECUTING ATTORNEY:  Some of that was in County—

THE COURT:  Excuse me.  [D.S.], who took you to county jail?

[D.S.]:  Sheriffs, I think.

THE COURT:  Noted.  Who took you to the County Jail?

[D.S.]:  Sheriff took me.

THE COURT:  Who took you to County Jail?  This is the last time I'll ask.

[D.S.]:  What do you mean?

THE COURT:  Noted.  Zero days.  I'm done.

6

**{¶ 10}** The journal entry reflected the juvenile court's disposition, including the notation "Pre-commitment days are:  0."  The parties agree that at the time of the juvenile court's disposition, D.S. had been held for 286 days—more than nine months—in detention.

**{¶ 11}** D.S. appealed the juvenile court's denial of his request for confinement credit.  Rather than file a merit brief in opposition to D.S.'s claim that the juvenile court erred by refusing to award credit, the Cuyahoga County Prosecuting Attorney's Office filed a "Notice of Conceded Error," *see* Eighth District Court of Appeals Local Rule 16(B), clarifying that "[t]he State agrees" with D.S.'s assignment of error and that pursuant to R.C. 2152.18(B), D.S. "was entitled to receive jail-time credit for the total amount of time in which he was confined in connection with his underlying case."

**{¶ 12}** Despite the state's concession that the juvenile court judge had erred in not granting D.S. credit for the time he was confined prior to disposition, the Eighth District affirmed the juvenile court's order.   We accepted D.S.'s discretionary appeal from that judgment and agreed to address his sole proposition of law:

> When a juvenile court commits a child to the Department of Youth Services, the court must state in its entry of commitment the total days [ ] the child was confined in connection with the offenses on which the order of commitment is based, including time for which the child was held on charges that were dismissed.  R.C. 2152.18(B).   Fifth and Fourteenth Amendments to the U.S. Constitution; Ohio Constitution, Article I, Section 16.

*See* 143 Ohio St.3d 1477, 2015-Ohio-3958, 38 N.E.3d 900.

## ANALYSIS

**{¶ 13}** Although the proposition of law before us presents a constitutional question in addition to a question of statutory interpretation, *see State v. Fugate,* 117 Ohio St.3d 261, 2008-Ohio-856, 883 N.E.2d 440, ¶ 7 ("The practice of awarding jail-time credit, although now covered by state statute, has its roots in the Equal Protection Clauses of the Ohio and United States Constitutions"), we do not reach the equal-protection argument advanced in the proposition because we can resolve this appeal based on the language of R.C. 2152.18(B). *See State v. Talty*, 103 Ohio St.3d 177, 2004-Ohio-4888, 814 N.E.2d 1201, ¶ 9, 25; *see also Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 347, 56 S.Ct. 466, 60 L.Ed. 688 (1936) (Brandeis, J., concurring), quoting *Burton v. United States*, 196 U.S. 283, 295, 25 S.Ct. 243, 49 L.Ed. 482 (1905) ("It is not the habit of the Court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case").

**{¶ 14}** R.C. 2152.18(B) states:

> When a juvenile court commits a delinquent child to the custody of the department of youth services pursuant to this chapter, the court shall state in the order of commitment the total number of days that the child has been confined in connection with the delinquent child complaint upon which the order of commitment is based.

R.C. 2152.18(B).

**{¶ 15}** The plain language of R.C. 2152.18(B) states that a juvenile is to receive credit for time he or she was "confined *in connection with* the delinquent child complaint upon which the order of commitment is based." (Emphasis added.) In its analysis, the court of appeals held that for credit to be given for the

confinement, the confinement must be related "to the underlying complaint, not any proceedings under previously dismissed complaints or indictments." 2015-Ohio-518, 29 N.E.3d 336, ¶ 6. In doing so, it stressed the portion of the statute that reads "complaint upon which the order of commitment is based," *see id*., while wholly ignoring the phrase that precedes that language—"*in connection with* the delinquent child complaint upon which the order of commitment is based." (Emphasis added.)

{¶ 16} The court of appeals' reading of the statute is too narrow.

{¶ 17} In *In re Thomas*, we construed R.C. 2152.18(B)'s predecessor statute, R.C. 2151.355(F)(6), Am.Sub.S.B. No. 181, 148 Ohio Laws, Part V, 10488, 10529, which contained the same "in connection with" phrase. *See* 100 Ohio St.3d 89, 2003-Ohio-5162, 796 N.E.2d 908, ¶ 11. We held that a juvenile is entitled to credit for the time served in a rehabilitation or treatment facility while awaiting the adjudication or disposition of the original delinquency complaint as well as the time the juvenile is held in one of those facilities on a complaint for a probation violation related to the original delinquency complaint. *Id.* at ¶ 10, 13. We explained, "Such detention goes to the original disposition in the case and is sufficiently linked to the adjudication of the original charges that credit is required by the statutory language." *Id.* at ¶ 13. *See also In re Dillard*, 5th Dist. Stark Nos. 2001CA00093 and 2001 CA00121, 2001 WL 1548758, *3 (Dec. 3, 2001).

{¶ 18} In this case, the court of appeals determined that *Thomas* was not directly on point, and although we agree, that does not mean that *Thomas* does not inform and illuminate the proper analysis here.[1] *Thomas* makes clear that judges

---

[1] The court of appeals instead relied on a decision of the Fourth District Court of Appeals, *In re O.H.*, 4th Dist. Washington No. 09CA38, 2010-Ohio-1244. There, the Fourth District addressed a claim for credit by a juvenile who initially had been found delinquent for assaulting a teacher, given a suspended sentence, and placed on probation. More than two years later, the juvenile was again adjudicated delinquent as a result of a domestic-violence charge against his sister, and that adjudication constituted a violation of his conditions of probation for the assault charge. The juvenile court judge revoked his probation on the assault charge and gave him credit for the time he had been confined in connection with the assault case, but the judge refused to give him additional credit for the time he had been held prior to disposition on the domestic-violence charge. The

must consider whether the period of detention for which a juvenile seeks credit is sufficiently linked—i.e., was *in connection with* the delinquent-child complaint upon which the order of commitment is based. Unlike the juvenile in *Thomas,* D.S. seeks credit for a period of confinement that occurred prior to the filing of the juvenile complaint upon which the juvenile court eventually ordered D.S. committed to DYS. Nevertheless, on the facts presented here, we have little trouble concluding that the juvenile court judge was required to give D.S. credit for all the time he was confined.

{¶ 19} Regardless of how the allegations against D.S. were framed and in which venue they were presented, there is no dispute that the allegations set forth in the original delinquency complaint in the juvenile court (two counts of aggravated robbery with firearms specifications), in the indictment before the common pleas court (two counts of aggravated robbery with firearms specifications and two counts of kidnapping with firearms specifications), and in the second and dispositive delinquency complaint in the juvenile court (one count of robbery with firearms specifications), all arose from the same single incident. And despite the juvenile court judge's characterizations during the disposition portion of the proceeding that the complaint before her was "an amended complaint that was transferred," "a new charge," or "a different case," the record makes clear that at the outset of the hearing she had recognized that the case was "*a refiling, an amended filing of what was originally filed before this Court* on May 14th of 2013 in Case Number DL 13106887." (Emphasis added.) Indeed, she was the judge who originally had ordered D.S. detained and the judge who had made the initial finding of probable cause.

---

appellate court properly recognized that the latter offense "constituted a separate criminal offense from the 2006 assault and brought with it the risk of a separate sentence." *Id*. at ¶ 11. Although the analysis in *O.H.* is a correct one, it is largely inapposite here.

**{¶ 20}** A judge enjoys a great deal of discretion in sentencing, particularly a juvenile court judge in fashioning a rehabilitative disposition. But "[t]he decision whether to credit pretrial confinement days is simply not part of the sentence." *State v. Gregory*, 108 Ohio App.3d 264, 268, 670 N.E.2d 547 (1st Dist.1995). "Credit for jail time is not open to tailoring to the individual case in the same sense as sentencing, because once the *sentence has already been rendered*, the remaining calculation is merely a computation of how much time has been served and how much remains." (Emphasis sic.) *Id.*

**{¶ 21}** There is no basis to alter these observations about jail-time credit in the context of a juvenile disposition. In R.C. 2152.18(B), the General Assembly was clear in its mandate: juveniles are entitled to credit for the period they are confined prior to disposition of a delinquency complaint. As the Second District Court of Appeals has explained:

> R.C. 2152.18(B) requires a juvenile court that commits a delinquent child to the custody of the department of youth services to state in its order of commitment the total number of days that the child has been held in detention in connection with the delinquent child complaint upon which the order of commitment is based. The department is then required to reduce the minimum period of institutionalization by that number of days. R.C. 2152.18(B); *In re T.J.*, Clark App. No. 2005-CA-123, 2006-Ohio-4406, ¶ 16.

> In [the case before us], the probation officer reported to the court that she did not think that [the juvenile] should be granted credit for time served in detention because he had not been cooperative and well-behaved. Accordingly, the juvenile court did not give [the juvenile] any credit for time served prior to the dispositional hearing.

The juvenile court's refusal to give credit for time served contradicts the statutory language, which provides that the court *shall* state the number of days served and that the department of youth services *shall* give credit for that number of days. The court has no discretion in this regard, notwithstanding the delinquent's behavior in detention. We trust that the court will be mindful of this fact on remand.

(Emphasis sic.) *In re R.A.I.*, 2d Dist. Miami Nos. 2006 CA 43 and 2006 CA 44, 2007-Ohio-2365, ¶ 12-14. *See also State ex rel. M.A. v. Reed*, 10th Dist. Franklin No. 15AP-795, 2016-Ohio-3079, ¶ 13 ("The plain language of R.C. 2152.18(B) requires ODYS to apply confinement credit to reduce the 'minimum period of institutionalization that was ordered,' regardless whether the minimum period of institutionalization includes a mandatory period of institutionalization for a firearm specification").

{¶ 22} Judges must grant confinement credit under R.C. 2152.18(B) if the confinement stems from an original complaint and is sufficiently linked to the adjudication of the charges upon which the juvenile court orders commitment. The statutory language is clear and unambiguous, and permits no other construction.[2] *Reed* at ¶ 13.

{¶ 23} As both D.S. and the state have argued throughout the proceedings, it would be fundamentally unfair to deny juveniles credit earned while awaiting the

---

[2] We recognize that the General Assembly recently amended R.C. 2151.18(B) "to broaden the circumstances under which a youth will receive credit against his or her term of institutionalization." *In re K.A.*, 6th Dist. Lucas No. L-12-1334, 2013-Ohio-3847, ¶ 5; *see also* 2012 Am.Sub.S.B. No. 337 (replacing the phrase "held in detention" with the word "confined"). We must construe a statute to give effect to the legislature's intent and avoid unreasonable results. R.C. 1.47(C); *State v. Wells*, 91 Ohio St.3d 32, 34, 740 N.E.2d 1097 (2001). It would be absurd to limit confinement credit due to a juvenile under R.C. 2151.18(B) merely because the form of the charging instrument against him or her changes even though the allegations set forth therein remain the same.

final disposition of the complaints against them by interpreting R.C. 2152.18(B) so narrowly that juveniles could lose *all* the credit they have earned simply because the original complaint was dismissed and a new complaint or indictment filed on the basis of the same incident for which the juvenile initially was charged and detained.

## CONCLUSION

{¶ 24} In this case, the entire period that D.S. was confined was "in connection with" the delinquent-child complaint upon which the order of commitment is based, and we agree with the parties that D.S. is entitled to credit for that time of confinement. Accordingly, we reverse the judgment of the court of appeals and remand this cause to the juvenile court for further proceedings consistent with this opinion, including the proper calculation and award of confinement credit.

Judgment reversed

and cause remanded.

PFEIFER, O'DONNELL, LANZINGER, FRENCH, and O'NEILL, JJ., concur.

KENNEDY, J., concurs in judgment only, with an opinion.

_____

**KENNEDY, J., concurring in judgment only.**

{¶ 25} Respectfully, I concur in the majority's judgment but not fully in its reasoning. I agree with the majority that it is unnecessary in resolving this case to address whether R.C. 2152.18(B) is unconstitutional as applied to appellant, D.S. I disagree, however, with the majority's decision to resolve the issue of statutory interpretation that D.S. raises—whether R.C. 2152.18(B) requires a juvenile court to credit all days a juvenile has been held in confinement pending disposition of a delinquency charge. The juvenile court could not have reasonably determined in light of the totality of the circumstances that D.S.'s admission to the allegations made in the complaint was entered knowingly, intelligently, and voluntarily.

Therefore, I would vacate the admission in order to prevent a manifest injustice, reverse the court of appeals' judgment (albeit on different grounds from those of the majority), and remand the matter to the juvenile court for further proceedings. *See State v. Cooperrider*, 4 Ohio St.3d 226, 227, 448 N.E.2d 452 (1983) (courts apply the plain-error doctrine to prevent a manifest injustice).

**{¶ 26}** Delinquency proceedings in juvenile court follow what is essentially a two-step procedure. *See In re M.P.R.*, 12th Dist. Butler No. CA2014-10-209, 2015-Ohio-3102, ¶ 14. After complying with certain requirements, such as "[a]scertain[ing] whether notice requirements have been complied with," Juv.R. 29(B), the court "shall request" the juvenile to admit or deny the allegations made in the complaint pursuant to Juv.R. 29(C). If the allegations of a juvenile's delinquency are proven or admitted, the court can impose a disposition immediately or it can schedule the disposition for a later date. Juv.R. 29(F)(2)(a) and (b); *In re M.P.R.* at ¶ 14.

**{¶ 27}** The failure to raise an issue on appeal usually constitutes waiver and precludes review of that issue under the principle of res judicata. *State v. Broom*, 40 Ohio St.3d 277, 281, 533 N.E.2d 682 (1988). "[Y]et we must also retain power to *sua sponte* consider particular errors under exceptional circumstances * * * under our plain error standard of analysis." *State v. Greer*, 39 Ohio St.3d 236, 244, 530 N.E.2d 382 (1988), citing *State v. Rogers*, 32 Ohio St.3d 70, 512 N.E.2d 581 (1987), and *State v. Zuern*, 32 Ohio St.3d 56, 512 N.E.2d 585 (1987).

**{¶ 28}** Appellate courts differ on whether the criminal or civil plain-error standard applies in a juvenile-delinquency case. *See, e.g.*, *In re Good*, 118 Ohio App.3d 371, 378, 692 N.E.2d 1072 (12th Dist.1997) (applying the criminal plain-error standard); *In re Etter*, 134 Ohio App.3d 484, 492-493, 731 N.E.2d 694 (1st Dist.1998) (applying the civil plain-error standard). While this court has not specifically addressed which standard applies, we have recognized that "the characterization of delinquency proceedings as civil is one of limited applicability"

because " 'there are criminal aspects to juvenile court proceedings.' " *In re Cross*, 96 Ohio St.3d 328, 2002-Ohio-4183, 774 N.E.2d 258, ¶ 21, quoting *In re Anderson*, 92 Ohio St.3d 63, 66, 748 N.E.2d 67 (2001). Because an admission in a juvenile-delinquency proceeding under Juv.R. 29 "is analogous to a guilty plea made by an adult," *In re Hall*, 9th Dist. Summit No. 20658, 2002-Ohio-1107, *1, I agree with those appellate districts that have held that the criminal plain-error standard applies in a juvenile-delinquency case.

{¶ 29} Under the adult-criminal plain-error standard, "we have [the] power to recognize '[p]lain errors or defects [affecting] substantial rights * * * although they were not brought to the attention of the court.' " *State v. Campbell*, 69 Ohio St.3d 38, 41, 630 N.E.2d 339 (1994), quoting Crim.R. 52(B). An alleged error is not a plain error unless the error clearly changed the outcome of the case. *Id*., citing *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph two of the syllabus.

{¶ 30} Like an adult's guilty plea to a criminal offense, an admission by a juvenile must be knowing, intelligent, and voluntary. See *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, ¶ 111-112.

> [A] plea will be deemed voluntary absent a showing of prejudice by the juvenile or a showing that the totality of the circumstances does not support a finding of a valid waiver. For purposes of juvenile delinquency proceedings, substantial compliance means that in the totality of the circumstances, the juvenile subjectively understood the implications of his plea.

*Id.* at ¶ 113.

{¶ 31} Plea agreements are frequently used to resolve juvenile cases. *See, e.g.*, *In re Wood*, 9th Dist. Medina No. 04CA0005-M, 2004-Ohio-6539; *In re K.S.J.*,

2d Dist. Montgomery No. 24387, 2011-Ohio-2064; *In re Argo*, 5th Dist. Muskingum No. CT2003-055, 2004-Ohio-4938. They are contractual in nature and subject to interpretation and enforcement under general contract-law principles. *State v. Bethel*, 110 Ohio St.3d 416, 2006-Ohio-4853, 854 N.E.2d 150, ¶ 50, citing *United States v. Wells*, 211 F.3d 988, 995 (6th Cir.2000). For a plea to exist, there must be a "meeting of the minds" between the state and the offender as to the terms of the agreement. *E.g.*, *State v. Smith*, 2d Dist. Greene No. 2009-CA-81, 2010-Ohio-6229, ¶ 45. " 'Generally * * * a plea agreement between the [s]tate and the defense is not binding on the court, as the ultimate decision of whether or not the agreement is accepted rests with the trial judge.' " *State v. Liskany*, 196 Ohio App.3d 609, 2011-Ohio-4456, 964 N.E.2d 1073, ¶ 190 (2d Dist.), quoting *State v. Burks*, 10th Dist. Franklin No. 04AP-531, 2005-Ohio-1262, ¶ 18.

{¶ 32} However, "[w]hen a defendant's guilty plea is induced by erroneous representations as to the applicable law, * * * the plea is not knowingly, intelligently, and voluntarily made." *State v. Bryant*, 4th Dist. Meigs No. 11CA19, 2012-Ohio-3189, ¶ 8, citing *State v. Sherman*, 5th Dist. Richland No. 2009-CA-132, 2010-Ohio-3959, ¶ 38-41, and *State v. Mitchell*, 11th Dist. Trumbull No. 2004-T-0139, 2006-Ohio-618, ¶ 15. "Generally, if the parties and the trial court have made a mutual mistake regarding the terms of a plea agreement, the proper remedy is to rescind it." *State v. Johnson*, 182 Ohio App.3d 628, 2009-Ohio-1871, 914 N.E.2d 429, ¶ 14 (4th Dist.), citing *State v. Hart*, 8th Dist. Cuyahoga No. 84531, 2005-Ohio-107, ¶ 12, *State v. Wintrow*, 12th Dist. Preble No. CA2003-10-021, 2005-Ohio-3447, ¶ 21, and *State v. Ulrey*, 8th Dist. Cuyahoga No. 71705, 1998 WL 213085 (Apr. 30, 1998). Moreover, if an offender entered a plea agreement that was predicated on a mutual mistake of law by the offender and the state, the plea agreement must be vacated. *See Wintrow* at ¶ 15-21.

{¶ 33} I agree with the facts as presented in the majority opinion and would emphasize the exchange among the assistant prosecutor, defense counsel, D.S., and

16

D.S.'s mother during the dispositional phase of the hearing after the juvenile judge had indicated that there would be zero credit for precommitment days. After the juvenile court accepted D.S.'s admission and adjudicated him delinquent, the court proceeded directly to disposition. As soon as the court concluded the disposition by denying D.S. credit for time served, D.S.'s attorney said, "[W]e *understood* you *have* to give credit for time served." (Emphasis added.) Both D.S. and his mother also protested the court's failure to give D.S. credit for time served. Specifically, D.S.'s mother responded: "That was the deal." And the assistant prosecutor said that "it was *understood* by the parties that [D.S.] would be committed for a holistic two-year sentence and that he *would get* the credit for the time that he's been in." (Emphasis added.)

{¶ 34} However, the continued protests by both attorneys, D.S., and his mother went unheeded by the juvenile judge, who insisted that no credit for time served was due. Consequently, D.S.'s attorney advised:

> We're going to move right now to vacate the plea. Because of the understanding—it was my understanding, I advised my client that he would get credit for time served because it's the same case, okay? So now the whole deal falls apart unless you are willing to give the credit for time served that he's been serving on this particular matter, okay?

{¶ 35} A review of the transcript of the dispositional phase outlined in the majority opinion demonstrates that the juvenile court never directly addressed D.S.'s motion to withdraw the admission on the grounds that the agreement was predicated on the parties' mistaken understanding that D.S. was entitled to credit for all time served because this was a reindictment of a prior juvenile case. By implication, however, the juvenile court denied the motion.

**{¶ 36}** In reviewing the transcript for the "totality of the circumstances" underlying D.S.'s admission, there are several notable takeaways. First, it is clear from the discussion about the prior off-the-record record sidebar conference that the assistant prosecutor, defense counsel, and juvenile court all discussed that the pending delinquency robbery charge stemmed from a reindictment of a prior juvenile case. Second, it is also clear that it was the understanding of the assistant prosecutor and defense counsel that because this was a reindicted case, under Ohio law the juvenile court had to give D.S. credit for all the time previously served. Third, the lawyers' belief that Ohio law entitled D.S. to receive credit for all the time previously served was a material term of the bargain between the assistant prosecutor and defense counsel.

**{¶ 37}** Therefore, D.S.'s decision to admit to the allegations made in the complaint was predicated on the representation of both his attorney and the assistant prosecutor that the law required the juvenile court to give him credit for all the time previously served. In D.S.'s mind, the holistic two-year commitment to the Ohio Department of Youth Services ("ODYS") that he agreed to in exchange for his admission included credit for the time served in the prior case that was dismissed and then refiled.

**{¶ 38}** However, the juvenile court did not share the lawyers' understanding of what a reindictment meant (and what they had told D.S. a reindictment meant) under Ohio law. The attorneys believed that because this was a reindictment of the same charge, D.S. was due credit for the time that he had served in the prior case. That was what D.S. was led to believe as well. In contrast, the juvenile judge understood that this was a reindictment, but under the law, with regard to credit for time served, she found that "[this case] was an amended complaint that was transferred" from the general division of the court of common pleas. It was a "new charge."

**{¶ 39}** At the time D.S. moved to withdraw his admission, there was a mutual mistake of law regarding his entitlement to credit for all time served in the prior case—a mistake that was material to the plea agreement. Because D.S. believed that the two-year ODYS commitment was "holistic" and would include credit for time served, his admission was not knowing, voluntary, and intelligent. *See Bryant*, 4th Dist. Meigs No. 11CA19, 2012-Ohio-3189, at ¶ 14 ("a misunderstanding c[annot] 'form the basis of a valid plea agreement' "), quoting *Johnson*, 182 Ohio App.3d 628, 2009-Ohio-1871, 914 N.E.2d 429, at ¶ 17.

**{¶ 40}** Courts apply the plain-error doctrine to prevent a manifest injustice. *See Cooperrider*, 4 Ohio St.3d at 227, 448 N.E.2d 452. Because the juvenile court could not have reasonably determined in light of the totality of the circumstances that D.S.'s admission to the allegations made in the complaint was entered knowingly, intelligently, and voluntarily, I would vacate the admission in order to prevent a manifest injustice, reverse the judgment of the court of appeals (albeit on different grounds from those of the majority) and remand the matter to the juvenile court for further proceedings.

_____

Timothy Young, Ohio Public Defender, and Brooke M. Burns, Assistant Public Defender, for appellant.

Timothy J. McGinty, Cuyahoga County Prosecuting Attorney, and Frank Romeo Zeleznikar, Assistant Prosecuting Attorney, for appellee, the state of Ohio.

_____