[Cite as *In re G.S.*, 2021-Ohio-3201.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

|  |  |  |
|---|---|---|
| IN RE G.S. | : | |
| | : | No. 110198 |
| A Minor Child | : | |

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 16, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL-19-109927

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Fallon Radigan and Warren Griffin, Assistant Prosecuting Attorneys, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Britta Barthol, Assistant Public Defender, *for appellant.*

SEAN C. GALLAGHER, P.J.:

{¶ 1} Defendant-appellant G.S. appeals the disposition ordered by the Cuyahoga County Court of Common Pleas, Juvenile Division ("juvenile court"), after he was adjudicated delinquent of multiple felony and misdemeanor counts arising

from a hazing incident.  Upon review, we affirm the juvenile court's disposition that committed appellant to the Ohio Department of Youth Services ("ODYS").

**Background**

{¶ 2}   On August 15, 2019, the state filed a 29-count complaint against appellant in the juvenile court.  The complaint included charges of rape, kidnapping, abduction, sexual battery, unlawful restraint, and hazing.  The charges arose from a hazing incident that occurred in June 2019 at a high school football camp during which appellant was accused, among other conduct, of sexually violating several underclassmen with the use of a Theragun.[1]  Appellant initially entered a denial to the charges.

{¶ 3}   On September 9, 2020, the juvenile court held a pretrial at which the state placed an offer on the record, though the parties had not yet reached an agreement.  The juvenile court addressed pending motions and safety protocols related to the Covid-19 pandemic.  The juvenile court denied a motion to continue filed by appellant's trial counsel, recognizing the length of time the matter had been pending, the safety protocols for trial, and latitude that would be provided in cross-examination.

{¶ 4}   Another pretrial was held on September 11, 2020, at which the plea agreement was stated on the record.  The juvenile court recognized that serious charges were involved, emphasized that the court was "not presuming that you're

---

[1] A Theragun is a percussive massage therapy device.

guilty or delinquent of anything[,]" informed appellant that serious penalties could be imposed, including placement within the ODYS, and indicated that the court was keeping an "open mind" about confinement. The juvenile court engaged in a thorough colloquy with appellant and informed him of the trial rights he would be giving up. Appellant expressed his understanding and acknowledged that he was entering his plea of his own free will and that he was not forced to enter his plea. The state briefly set forth the facts relating to the hazing incident that gave rise to the complaint, stating in part:

> On or about June 10th, 2019, [G.S.], along with codefendant[s] * * * were inside of a room of their dormitory.

> They recruited young men on the football team to come into the room. At this time those young men were told that they needed to be initiated by having a Theragun, which is a percussive therapy device, a massage therapy gun, placed up against and up their butt hole, the anal opening of their posterior.

> This happened to a number of young men. There were five felony victims in this case, your Honor, and the evidence would have been that the Theragun went up into the anus of a number of those young men.

> Each of those young men felt that they were unable to leave due to either peer pressure exerted by the upperclassmen to include [G.S. and the codefendants], or in addition, physical pressure exerted by (inaudible) and/or [G.S.] to keep them inside the room.

{¶ 5} The juvenile court then reviewed the charges one by one. Appellant entered an admission to 19 counts of the complaint including 3 counts of sexual battery, in violation of R.C. 2907.03(A)(1), a felony of the third degree; an amended count of kidnapping, in violation of R.C. 2905.01(A)(2), a felony of the second degree; 11 counts of hazing, in violation of R.C. 2903.31(B)(1), a misdemeanor of the

fourth degree; and 4 counts of unlawful restraint, a misdemeanor of the third degree. The remaining ten counts were nolled. The juvenile court found the admissions were knowingly, voluntarily, and intelligently entered and adjudicated appellant delinquent. The matter was continued for a dispositional hearing to be held on November 23, 2020. The court ordered a juvenile sex offender registration and notification ("JSORN") assessment and a probation report.

{¶ 6} The state and the defense each filed a sentencing memorandum. At the dispositional hearing, appellant was present, along with counsel and his parents. A co-delinquent (J.M.), his parents, and his counsel also were present. Appellant's investigating probation officer ("IPO") was not present because of a Covid-19 quarantine. However, the co-delinquent's IPO was present on behalf of the probation department. The assistant prosecutors also were present.

{¶ 7} The co-delinquent's IPO spoke regarding appellant's probation report, which the court stated it had read. The juvenile court was informed that this was appellant's first involvement in the court, he graduated high school, he was working, and was enrolled to attend community college. Appellant also had no diagnosed or reported mental-health or substance-abuse issues, and there were no reported problems in the home. Appellant had a very low risk score of "3." The juvenile court was aware that appellant's IPO had not made a recommendation because the Ohio Guidestone's JSORN assessment was not yet completed and that

appellant did not cause the delay.[2]  Appellant's IPO was available to be contacted by phone; however, the judge did not find this necessary and indicated the co-delinquent's IPO had answered the court's questions.

{¶ 8}  The state addressed the court and offered as exhibits into evidence a photograph, victim impact letters, and a Snapchat video.  The state indicated that there were 11 victims, some that experienced worse treatment than others.  Some of the victims had the Theragun "forced" up their anus by appellant.  For instance, one of the victims repeatedly asked to leave the room, appellant told him he could not leave, and he was held down and there "was penetration."  The state indicated that from the investigation it was known that appellant "did it worse to these individuals," that when appellant used the Theragun, "these boys were penetrated," and there was no penetration when the co-delinquent J.M. used the Theragun.  Some victims were "tapped on the buttocks versus being penetrated."  A statement was read from one victim's family expressing that appellant had not shown any remorse for his actions, had not truly taken accountability, and engaged in conduct demonstrating a disregard for the victims and the justice system.  The state indicated that appellant deleted messages about the incident.  He posted a Snapchat video that says, "Innocent until proven guilty, preservation boy" and includes a heart symbol.  As argued by the state, "[T]his is not a joke.  There were 11 victims here, some of

---

[2] It appears that there was a delay in the referral: appellant completed the first part of the assessment with Ohio Guidestone, and the second part of the assessment was scheduled after the date of the dispositional hearing.

[whom] were sexually assaulted, * * * these individuals deserve better * * * it went way too far, and [the victims' lives] have been changed forever * * *."

{¶ 9} Appellant's trial counsel indicated that appellant was sorry for what happened and discussed mitigating factors. Appellant addressed the court and apologized to those involved. He indicated he was taking steps to be a better person, he was residing in Columbus with roommates, he was working, and he was planning to attend Columbus State with the goal of transferring to Ohio State University. He explained the Snapchat video he created was "[s]tupidity, ignorance, lack of knowledge." He indicated he had no prior juvenile court history and he had no substance-abuse issues. Appellant's father indicated that appellant and the co-delinquent were "good kids," they had never been in trouble, and that they made a bad decision and things got out of hand.

{¶ 10} On Count 3, the kidnapping count, the juvenile court committed appellant to the ODYS for an indefinite term consisting of a minimum period of 12 months and a maximum period not to exceed the child's attainment of the age of 21. On each of the sexual battery counts, the juvenile court committed appellant to the ODYS for an indefinite term consisting of a minimum period of 6 months and a maximum period not to exceed the child's attainment of the age of 21, and the court ordered the commitment to be served concurrent to Count 3. On each of the remaining counts, which were misdemeanor counts, the court imposed a 90-day commitment and ordered the commitment to be served concurrent with Count 3.

{¶ 11} The juvenile court denied appellant's motion for reconsideration and for a new dispositional hearing. Appellant timely filed this appeal.

**Law and Analysis**

{¶ 12} Appellant raises three assignments of error for our review. Under the first assignment of error, appellant claims the juvenile court committed plain error by imposing a disposition without the completion of the court-ordered assessment and the probation report.

{¶ 13} Appellant argues it was plain error for the juvenile court to proceed to disposition without the completion of the JSORN assessment and without appellant's IPO's presence and recommendation because he claims these would have assisted the juvenile court in imposing an appropriate disposition. Appellant represents that his IPO stated in a letter attached to the motion for reconsideration that she realistically would have been looking at a community control sanction with the proper counseling services to address any recommendations from the JSORN assessment. However, the juvenile court was in possession of the probation report, heard from a representative from the probation department, was informed of mitigating facts, and acted within its discretion in proceeding to disposition. Appellant fails to cite any authority, and we have found none, to support a finding of plain error under these circumstances.

{¶ 14} A judge enjoys a great deal of discretion in sentencing. *In re D.S.*, 148 Ohio St.3d 390, 2016-Ohio-7369, 71 N.E.3d 223, ¶ 20. Our review of the transcript reflects that the co-delinquent's IPO was present on behalf of the probation

department and discussed appellant's probation report. The juvenile court was aware that the report did not include a recommendation because the JSORN assessment had not yet been completed. The juvenile court indicated that its questions had been answered by the co-delinquent's IPO, and the court did not find speaking to appellant's IPO, who was available by phone, to be necessary. No motion to continue the dispositional hearing was made, and the juvenile court proceeded to impose disposition without any objection.

{¶ 15} Even if appellant's IPO had provided a specific recommendation of community control, it is not clear that this would have changed the outcome of the juvenile court's disposition. The juvenile court had reviewed the probation report and was informed that appellant had no history in the courts, he had no reported problems, he was working and was planning to attend community college in Columbus, and he had a risk score of "3." Further, appellant's father described him as a good kid without any issues or cause for concern. Appellant addressed the court directly, apologized for his actions, noted the positive steps he was taking toward his future, and explained the Snapchat video he posted. Appellant's attorney requested a disposition of community control sanctions in his sentencing memorandum and presented mitigating factors to the court. However, the state ensured that the seriousness of the offenses and the impact upon the victims were not overlooked.

{¶ 16} Our review reflects that the trial court acted within its discretion in proceeding to disposition and that no plain error occurred. Moreover, appellant fails to demonstrate that the asserted error affected the outcome of the proceedings

or that he was otherwise prejudiced.  Accordingly, the first assignment of error is overruled.

{¶ 17} Under the second assignment of error, appellant claims the juvenile court abused its discretion in determining a commitment to the ODYS was the appropriate disposition for appellant.

{¶ 18} A disposition ordered by the juvenile court will not be reversed absent an abuse of discretion. *In re D.S.*, 111 Ohio St.3d 361, 2006-Ohio-5851, 856 N.E.2d 921, at ¶ 6; *In re K.M.C.*, 8th Dist. Cuyahoga No. 103449, 2016-Ohio-5322, ¶ 4.  An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).  When reviewing for an abuse of discretion, "'an appellate court is not free to substitute its judgment for that of the trial judge.'"  *State v. Herring*, 94 Ohio St.3d 246, 255, 762 N.E.2d 940 (2002), quoting *Berk v. Matthews*, 53 Ohio St.3d 161, 169, 559 N.E.2d 1301 (1990).

{¶ 19} Pursuant to R.C. 2152.19(A), "If a child is adjudicated a delinquent child, the court may make any of the [listed] orders of disposition, in addition to any other disposition authorized or required by [R.C. Chapter 2152] * * *."  "Dispositions imposed under the delinquency statutes are to be 'reasonably calculated to achieve the overriding purposes' of R.C. 2152.01" and "must also be 'commensurate with and not demeaning to the seriousness of the * * * conduct and its impact on the victim, and consistent with dispositions for similar acts committed by similar delinquent children.'"  *State v. Morgan*, 153 Ohio St.3d 196, 2017-Ohio-7565, 103 N.E.3d 784,

¶ 46, quoting R.C. 2152.01(B). The overriding purposes for dispositions that a juvenile court must consider under R.C. Chapter 2152 are "to provide for the care, protection, and mental and physical development of children subject to this chapter, protect the public interest and safety, hold the offender accountable for the offender's actions, restore the victim, and rehabilitate the offender." R.C. 2152.01(A). "These purposes shall be achieved by a system of graduated sanctions and services." *Id.*

{¶ 20} Appellant claims that the ODYS commitment was purely punitive rather than rehabilitative, that the juvenile court did not properly weigh the available dispositions, and that he was not offered any services and received the most severe disposition for a juvenile. He argues that the victims were not requesting an ODYS commitment and his probation officer was realistically looking at a community control sanction. Appellant states that this was his first time in the court system, he was working and living in the community for 15 months without incident, and he was enrolled to begin classes at a community college. Appellant also states that he showed remorse and apologized to the victims, and he claims that he could have been rehabilitated without an order of commitment. Appellant focuses his argument on the rehabilitative purpose of delinquency dispositions. However, holding the offender accountable for his actions and restoring the victims also are among the "overriding purposes" of juvenile disposition under R.C. 2152.01(A).

{¶ 21} Appellant admitted to kidnapping and multiple counts of sexual battery, unlawful restraint, and hazing. The charges stemmed from a hazing incident during which multiple victims had a Theragun forced up their anuses. Appellant initially made light of the situation. The hazing incident that occurred was not a joking matter. At the pretrial hearing at which appellant entered his admission to the charges, the juvenile court informed appellant that serious penalties could be imposed for the felonies including "a minimum of one year [in ODYS] up to [his] 21st birthday * * *." Appellant indicated his understanding. The juvenile court expressed that it was "keeping an open mind" with regard to the disposition.

{¶ 22} At the dispositional hearing, the juvenile court heard from the probation department, the state, appellant's counsel, appellant, and his parents. The juvenile court also had reviewed the sentencing memoranda, the probation report, the victim impact letters, and the Snapchat video. The court was aware of mitigating factors and the commendable efforts that appellant was taking toward his future. The seriousness of the conduct and the impact upon the victims were also considered. *See* R.C. 2152.01. The court indicated at the dispositional hearing that it had received defense counsel's sentencing recommendation, which was for community control sanctions. The state indicated at the hearing that it would defer to the court on sentencing. The state also requested the court punish appellant "as [the court] see[s] fit" in the state's sentencing memorandum.

{¶ 23} Although appellant argues that the juvenile court gave disparate treatment to a similarly situated co-delinquent, appellant fails to recognize that he

engaged in distinct and more serious conduct from the co-delinquent.[3]  Appellant was adjudicated delinquent on four felony counts, which included three counts of sexual battery and one count of kidnapping, in addition to the misdemeanor counts. There were 11 victims.  The investigation showed some victims were treated worse than others, appellant would not permit a victim to leave, and appellant used much more force and penetrated several victims, whereas the co-delinquent did not penetrate any victims.

{¶ 24} It is evident that the juvenile court considered the statutory purposes in rendering the disposition.  As the juvenile court stated in its journal entry, "[t]his court is guided for dispositional purposes by ORC 2152.01," which the court set forth and gave due consideration.  Upon the record before us, it cannot be said that the juvenile court's disposition was not reasonably calculated to achieve those purposes, commensurate with and not demeaning to the seriousness of the appellant's conduct and its impact on his 11 victims, and consistent with dispositions for similar acts committed by similar delinquent children.  The ODYS sanction was well within the broad discretion of the juvenile court, and there is nothing in the record to suggest that the juvenile court acted unreasonably, arbitrarily, or unconscionably.

{¶ 25} The juvenile court did not abuse its discretion in committing appellant to the ODYS.  Appellant's second assignment of error is overruled.

---

[3] Appellant states that the co-delinquent received a suspended ODYS commitment and a 90-day commitment to a juvenile detention center that could be reduced.  The co-delinquent was adjudicated delinquent on one felony count for kidnapping, and the remaining counts were misdemeanors.

{¶ 26} Under the third assignment of error, appellant claims he was denied his constitutional right to effective assistance of counsel when his trial counsel failed to request a continuance of the dispositional hearing. He argues that a continuance should have been requested in order to obtain the presence of appellant's IPO and to allow for the completion of the JSORN assessment and probation report.

{¶ 27} "[A]ppellate courts generally review ineffective assistance of counsel claims on a de novo basis * * *." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 53. In order to prevail on an ineffective assistance of counsel claim, the defendant must show that his trial counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Grate*, 164 Ohio St.3d 9, 2020-Ohio-5584, 172 N.E.3d 8, ¶ 49. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *." *Strickland* at 689. To establish prejudice, the defendant must demonstrate there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

{¶ 28} Appellant cannot demonstrate that counsel's performance was deficient or that any resulting prejudice occurred. Although the JSORN assessment had not been completed and the probation report lacked a specific recommendation, the probation report included the mitigating facts and was reviewed by the court. Also, the co-delinquent's IPO was present on behalf of the probation department to

address appellant's probation report, appellant's IPO could have been reached by phone, and the court expressed that its questions had been adequately answered by the co-delinquent's IPO. Appellant's counsel presented mitigating factors, and he requested a disposition of community control sanctions in his sentencing memorandum that was reviewed by the juvenile court. The juvenile court was guided by the dispositional purposes set forth under R.C. 2152.01 in rendering its disposition.

{¶ 29} Upon the record before us, it cannot be said that counsel was ineffective for failing to request a continuance, and there is nothing to suggest a reasonable probability that the disposition would have been any different if the JSORN assessment had been completed and a recommendation for community control had been made by appellant's IPO.[4] Accordingly, we overrule the third assignment of error.

{¶ 30} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution. The

---

[4] Insofar as the JSORN assessment had not been completed, a juvenile offender classification hearing is not required until appellant is released from the secure facility. R.C. 2152.83(B)(1) and (D)(6). Nonetheless, we recognize that appellant's IPO was awaiting this assessment to make a recommendation.

finding of delinquency having been affirmed, any bail or stay of execution pending appeal is terminated.  Case remanded to the trial court for execution of commitment.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
SEAN C. GALLAGHER, PRESIDING JUDGE

EILEEN A. GALLAGHER, J., and
LISA B. FORBES, J., CONCUR