The STATE of Ohio, Appellee,

v.

NAUGLE, Appellant.

[Cite as *State v. Naugle,* 182 Ohio App.3d 593, 2009-Ohio-3268.]

Court of Appeals of Ohio,
Fifth District, Stark County.

No. 2008–CA–00190.

Decided June 29, 2009.

John D. Ferrero, Stark County Prosecuting Attorney, and Renee M. Watson, Assistant Prosecuting Attorney, for appellee.

Richard Drake, for appellant.

GWIN, Judge.

{¶ 1} Defendant-appellant, Pamela Naugle, appeals from her conviction and sentence in the Stark County Court of Common Pleas on one count of obstructing justice, a felony of the fifth degree, in violation of R.C. 2921.32(A)(1) or (2) and/or (5) and (C)(3). Plaintiff-appellee is the state of Ohio.

## STATEMENT OF THE FACTS AND CASE

{¶ 2} In the early morning hours of February 19, 2008, a law-enforcement officer observed three individuals carrying appliances in the street. Police officers from the Alliance Police Department followed tracks in the snow to the back door of a residence owned by appellant. Upon knocking on the front door, the officers spoke with two juvenile girls, Tehtyana Cooper and Tammara Crawford. Cooper is appellant's daughter. Cooper went upstairs and awoke appellant, who had been sleeping. Appellant consented to a search of her home. The officers found wet winter coats and clothing, but all three denied any knowledge of anyone hiding in the house.

{¶ 3} The police arrested the girls for stealing the appliances that had been taken from a nearby garage. During questioning at the police station, the girls admitted to hiding three male individuals under the crawl space of appellant's residence, one of whom was appellant's brother. Upon returning to appellant's residence, appellant's son told the officers that appellant had taken her brother and another individual to the bus station. The third individual was discovered still hiding in the crawl space. Appellant returned home and eventually admitted to driving her brother and his friend to the bus station after driving a neighbor to work.

{¶ 4} On March 24, 2008, the Stark County Grand Jury indicted appellant on one count of obstructing justice in violation of R.C. 2921.32. A bench trial was held on May 16 and June 4, 2008. Appellant had subpoenaed the two juvenile girls to testify. Because the girls had been charged with obstructing justice in juvenile court but had yet to be arraigned and secure counsel, the trial court determined that they were unable to knowingly, voluntarily, and intelligently waive their Fifth Amendment rights and therefore precluded their testimony. The trial court did not permit appellant's counsel to proffer the girls' testimony.

{¶ 5} At the conclusion of the trial, the trial court found appellant guilty as charged. By judgment entry filed July 30, 2008, the trial court sentenced appellant to six months in prison, suspended in lieu of six months of probation.

{¶ 6} Appellant filed an appeal, and this matter is now before this court for consideration. The assignments of error are as follows:

{¶ 7} "The trial court violated the appellants (sic) right to due process when it precluded the testimony of two defense witnesses.

{¶ 8} "The trial court's finding of guilty was against the manifest weight of the evidence and was not supported by sufficient evidence."

I

{¶ 9} Appellant claims that the trial court denied her rights to compulsory and due process when it excluded the testimony of the two juvenile girls. Appellant also claims that the trial court erred in prohibiting her trial counsel from proffering on the record their proposed testimony. We disagree.

{¶ 10} The gravamen of this assignment of error is the manner in which the trial court denied appellant's right to put these witnesses on the stand. Admittedly, both girls were tangentially involved in the underlying predicate offense (theft) and the harboring of the three individuals who perpetrated the theft. While the girls had been charged with obstructing justice in juvenile court, they had not been arraigned and had not yet secured counsel. Both girls appeared at trial pursuant to a subpoena issued by appellant. After a discussion on the

record of the girls' Fifth Amendment rights against self-incrimination, appellant stated that she did not want her daughter to testify.

{¶ 11} Under the doctrine of "invited error," it is well settled that "a party will not be permitted to take advantage of an error which she herself invited or induced the trial court to make." *State ex rel. Smith v. O'Connor* (1995), 71 Ohio St.3d 660, 663, 646 N.E.2d 1115, citing *State ex rel. Fowler v. Smith* (1994), 68 Ohio St.3d 357, 359, 626 N.E.2d 950. See also *Lester v. Leuck* (1943), 142 Ohio St. 91, 26 O.O. 280, 50 N.E.2d 145, paragraph one of the syllabus. As the Supreme Court of Ohio has stated:

{¶ 12} " 'The law imposes upon every litigant the duty of vigilance in the trial of a case, and even where the trial court commits an error to his prejudice, he is required then and there to challenge the attention of the court to that error, by excepting thereto, and upon failure of the court to correct the same to cause his exceptions to be noted. It follows, therefore, that, for much graver reasons, a litigant cannot be permitted, either intentionally or unintentionally, to induce or mislead a court into the commission of an error and then procure a reversal of the judgment for an error for which he was actively responsible.' " *Lester* at 92–93, 26 O.O. 280, 50 N.E.2d 145, quoting *State v. Kollar* (1915), 93 Ohio St. 89, 91, 112 N.E. 196.

{¶ 13} Based upon the invited-error doctrine and appellant's personal statement regarding her daughter, we will limit our review of this assignment of error to the denial of Tammara Crawford's testimony. As the record indicates, Crawford was 16 years old and was not accompanied to the trial by a parent or an attorney.

{¶ 14} It is apparent from the record through the trial court's questioning of appellant's counsel, the testimony of Officer Heaviln, and the testimony of Brelon Young, that if Crawford had been permitted to testify, she could have said: (1) the girls were responsible for initially hiding the three suspects in the crawl space, (2) appellant therefore did not know that the suspects were in the house the first time the police came to her home, and (3) whether appellant had observed the stolen items prior to the police arriving.

{¶ 15} The state argues that any error on this issue was harmless. We agree.

{¶ 16} Crim.R. 52(A), which governs the criminal appeal of a nonforfeited error, provides that "[a]ny error * * * which does not affect substantial rights shall be disregarded." Thus, Crim.R. 52(A) sets forth two requirements that must be satisfied before a reviewing court may correct an alleged error. First, the reviewing court must determine whether there was an "error"—i.e., a "[d]eviation from a legal rule." *United States v. Olano* (1993), 507 U.S. 725, 732–

733, 113 S.Ct. 1770, 123 L.Ed.2d 508. Second, the reviewing court must engage in a specific analysis of the trial court record—a so-called "harmless error" inquiry—to determine whether the error "affect[ed] substantial rights" of the criminal defendant. In *U.S. v. Dominguez Benitez* (2004), 542 U.S. 74, 124 S.Ct. 2333, 159 L.Ed.2d 157, the court defined the prejudice prong of the plain-error analysis. "It is only for certain structural errors undermining the fairness of a criminal proceeding as a whole that even preserved error requires reversal without regard to the mistake's effect on the proceeding. See *Arizona v. Fulminante,* 499 U.S. 279, 309–310[, 111 S.Ct. 1246, 113 L.Ed.2d 302] (1991). * * * Otherwise, relief for error is tied in some way to prejudicial effect, and the standard phrased as 'error that affects substantial rights,' used in Rule 52, has previously been taken to mean error with a prejudicial effect on the outcome of a judicial proceeding. See *Kotteakos v. United States,* 328 U.S. 750[, 66 S.Ct. 1239, 90 L.Ed. 1557] (1946). To affect 'substantial rights,' see 28 U.S.C. § 2111, an error must have 'substantial and injurious effect or influence in determining the * * * verdict.' *Kotteakos,* supra, at 776[, 66 S.Ct. 1239, 90 L.Ed. 1557]." *Dominguez Benitez,* 542 U.S. at 81, 124 S.Ct. 2333, 159 L.Ed.2d 157. See also *State v. Barnes* (2002), 94 Ohio St.3d 21, 759 N.E.2d 1240; *State v. Fisher,* 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, ¶ 7. Thus, a so-called "[t]rial error" is "error which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." *Fulminante,* 499 U.S. at 307–308, 111 S.Ct. 1246, 113 L.Ed.2d 302; *State v. Ahmed,* Stark App. No. 2007–CA–00049, 2008-Ohio-389, 2008 WL 307711, ¶ 23–24.

{¶ 17} "When a claim of harmless error is raised, the appellate court must read the record and decide the probable impact of the error on the minds of the average jury." *State v. Young* (1983), 5 Ohio St.3d 221, 226, 5 OBR 484, 450 N.E.2d 1143, citing *Harrington v. California* (1969), 395 U.S. 250, 254, 89 S.Ct. 1726, 23 L.Ed.2d 284.

{¶ 18} The bill of particulars filed by the state in appellant's case specified that appellant drove the suspects from her residence and to a bus station, knowing that they were wanted by the police with respect to the stolen appliances.

{¶ 19} Testimony at trial established that Officer Palozzi returned to appellant's home after his investigation revealed that the actual suspects were not the juvenile girls, but rather three men—Tristan Naugle, Dereck Bruce and Brelon Young. Officer Palozzi discovered that the men were hiding in appellant's home in a crawl space. Appellant was not home when officers initially arrived, but returned home shortly thereafter. Officer Palozzi spoke with appellant, and his body microphone recorded the conversation. During that conversation, appellant

first lied to Officer Palozzi. Instead of telling him that she had just transported the suspects to the bus station, she initially told him that she had just returned home from a trip to the store. She later changed her story. Appellant told Officer Palozzi that after the police had arrested her daughter and her friend and left her home earlier that morning, she observed her brother and Bruce exiting the crawl space and did not contact police, but instead took them to the bus station. This conversation was played for the court twice, once during Officer Palozzi's testimony and once during appellant's testimony. Additionally, during appellant's own testimony, she admitted that she went through with dropping the men off at the bus station even after she learned that they had committed the crimes.

{¶ 20} The trial judge acting as the trier of fact in appellant's case was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. " 'While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence.' " *State v. Craig* (Mar. 23, 2000), Franklin App. No. 99AP–739, 2000 WL 297252, *3, quoting *State v. Nivens* (May 28, 1996), Franklin App. No. 95APA09–1236, 1996 WL 284714, *3. Indeed, the jurors need not believe all of a witness's testimony, but may accept only portions of it as true. *State v. Raver*, Franklin App. No. 02AP–604, 2003-Ohio-958, 2003 WL 723225, ¶ 21, citing *State v. Antill* (1964), 176 Ohio St. 61, 67, 26 O.O.2d 366, 197 N.E.2d 548; *State v. Burke*, Franklin App. No. 02AP–1238, 2003-Ohio-2889, 2003 WL 21291042, citing *State v. Caldwell* (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492.

{¶ 21} In the case at bar, the trial judge heard the witnesses, evaluated the evidence, and was convinced of appellant's guilt.

{¶ 22} Accordingly, we find that no manifest injustice occurred. Further, there is no reasonable possibility that had the trial judge heard the testimony of Tammara Crawford, he would have found appellant not guilty. *State v. Lytle* (1976), 48 Ohio St.2d 391, 403, 2 O.O.3d 495, 358 N.E.2d 623, vacated on other grounds (1978), 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154.

{¶ 23} Appellant's first assignment of error is overruled.

## II

{¶ 24} In her second assignment of error, appellant claims that the trial court's finding of guilty was against the sufficiency and manifest weight of the evidence. We disagree.

{¶ 25} When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, could reasonably support a finding of guilt beyond a reasonable doubt. See *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541, 546, stating that "sufficiency is the test of adequacy"; *State v. Jenks* (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492. The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560; *Jenks*, 61 Ohio St.3d at 273, 574 N.E.2d 492.

{¶ 26} Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25–26. "In other words, a reviewing court asks whose evidence is more persuasive—the state's or the defendant's? * * * [E]ven though there may be sufficient evidence to support a conviction, a reviewing court can still re-weigh the evidence and reverse a lower court's holdings." *State v. Wilson*, ¶ 25–26. However, an appellate court may not merely substitute its view for that of the jury, but must find that " 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717. Accordingly, reversal on manifest-weight grounds is reserved for " 'the exceptional case in which the evidence weighs heavily against the conviction.' " *State v. Thompkins* at 387, 678 N.E.2d 541, quoting *Martin* at 175, 20 OBR 215, 485 N.E.2d 717.

{¶ 27} In *State v. Thompkins*, the Ohio Supreme Court held, "To reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary." Id. at paragraph three of the syllabus. However, to "reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." Id. at paragraph four of the syllabus; *State v. Miller*, 96 Ohio St.3d 384, 2002-Ohio-4931, 775 N.E.2d 498, ¶ 38.

{¶ 28} Employing the above standard, we believe that the state presented sufficient evidence from which the trier of fact could conclude, beyond a reasonable doubt, that appellant committed the offense of obstructing justice.

{¶ 29} The elements of obstructing justice as charged in appellant's case are (1) no person, with purpose to hinder the discovery, apprehension, prosecution,

conviction or punishment, (2) of another for crime, or to assist another to benefit from the commission of a crime, (3) harbor or conceal the other person, or (4) provide the other person with money, transportation, a weapon, a disguise or other means of avoiding discovery or apprehension, or (5) communicate false information to any person. R.C. 2921.32(A)(2).

{¶ 30} Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the crime of obstructing justice.

{¶ 31} We hold, therefore, that the state met its burden of production regarding each element of the crime and, accordingly, there was sufficient evidence to support appellant's conviction.

{¶ 32} As an appellate court, we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent, and credible evidence upon which the fact-finder could base its judgment. *Cross Truck Equip. Co. v. Joseph A. Jeffries Co.* (Feb. 10, 1982), Stark App. No. CA–5758, 1982 WL 2911. "A fundamental premise of our criminal trial system is that 'the *jury* is the lie detector.' *United States v. Barnard,* 490 F.2d 907, 912 (C.A.9 1973) (emphasis added), cert. denied, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). Determining the weight and credibility of witness testimony, therefore, has long been held to be the 'part of every case [that] belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.' *Aetna Life Ins. Co. v. Ward,* 140 U.S. 76, 88, 11 S.Ct. 720, 724–725, 35 L.Ed. 371 (1891)." *United States v. Scheffer* (1998), 523 U.S. 303, 313, 118 S.Ct. 1261, 140 L.Ed.2d 413.

{¶ 33} Although appellant cross-examined the witnesses and argued that she had no knowledge that the men were hiding in her house, and further, that she did not know until they were exiting the car that they had committed any crime, the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison* (1990), 49 Ohio St.3d 182, 552 N.E.2d 180, certiorari denied (1990), 498 U.S. 881, 111 S.Ct. 228, 112 L.Ed.2d 183. The trial judge was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. " 'While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence.' " *State v. Craig,* 2000 WL 297252, *3, quoting *State v. Nivens,* 1996 WL 284714, *3. Indeed, the jurors need not believe all of a witness's testimony, but may accept only portions of it as true. *State v. Raver,* Franklin App. No. 02AP–604, 2003-Ohio-958, 2003 WL 723225, ¶ 21, citing *State v.*

*Antill* (1964), 176 Ohio St. 61, 67, 26 O.O.2d 366, 197 N.E.2d 548; *State v. Burke,* Franklin App. No. 02AP–1238, 2003-Ohio-2889, 2003 WL 21291042, citing *State v. Caldwell* (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492.

{¶ 34} After reviewing the evidence, we cannot say that this is one of the exceptional cases in which the evidence weighs heavily against the convictions. The jury did not create a manifest injustice by concluding that appellant was guilty of the crimes of burglary and violating a protection order. We conclude that the trier of fact, in resolving the conflicts in the evidence, did not create a manifest injustice to require a new trial. The jury heard the witnesses, evaluated the evidence, and was convinced of appellant's guilt.

{¶ 35} Appellant's second assignment of error is overruled.

{¶ 36} Accordingly, the judgment of the Court of Common Pleas, Stark County, Ohio, is affirmed.

Judgment affirmed.

HOFFMAN, J., concurs.

FARMER, P.J., dissents.

FARMER, Presiding Judge, dissenting.

{¶ 37} I respectfully dissent from the majority's view that the harmless-error rule applies to the resolution of assignment of error I.

{¶ 38} The majority does not address the issue of the refusal of the trial court to grant a continuance to resolve the Fifth Amendment issues of Crawford's testimony.

{¶ 39} The purpose of the continuance was to secure independent legal counsel for Crawford so she could be advised of the consequences of testifying about her involvement in the incident. The trial court denied this request, given its prior diatribe about the lateness of the request.

{¶ 40} Generally, a denial of a continuance is viewed under the abuse-of-discretion standard, which is a determination as to whether the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983) 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140. This court is required to balance this standard against appellant's constitutionally guaranteed rights to compulsory and due process. The Sixth Amendment to the United States Constitution establishes a defendant's right to compulsory process. It provides, "In all criminal prosecutions, the

accused shall enjoy the right * * * to have compulsory process for obtaining witnesses in his favor * * *." Article I, Section 10 of the Ohio Constitution similarly affords a defendant the right to compulsory process. "Compulsory process enables a defendant to present his or her defense by means of subpoenaing witnesses on his or her behalf and by requiring subpoenaed witnesses to produce books, papers, documents, or other evidence." *State v. Buhrman* (Sept. 12, 1997), Greene App. No. 96 CA 145, 1997 WL 566154, *7. The essence of "due process of law" under the Fifth Amendment to the United States Constitution is "fair play." The absolute fundamentals of due process are jurisdiction, adequate notice, and a fair hearing.

{¶ 41} I would balance these issues in a vacuum, not knowing whether Crawford, after being counseled, would have waived her right against self-incrimination. Also, we cannot determine Crawford's credibility, as that is within the province of the triers of fact. *State v. Jamison* (1990), 49 Ohio St.3d 182, 552 N.E.2d 180, certiorari denied (1990), 498 U.S. 881, 111 S.Ct. 228, 112 L.Ed.2d 183.

{¶ 42} In balancing these factors, I would find that appellant's right to compulsory process trumps the trial court's discretion to deny the continuance of the nonjury trial. The continuance would not have inconvenienced any of the state's witnesses, as they had testified at the previous hearing held on May 16, 2008. In fact, the May 16, 2008 hearing was interrupted by a sua sponte continuance by the trial court:

{¶ 43} Second, appellant took the witness stand during her case-in-chief. This was done after the trial court's denial of the Crawford testimony on a continuance. I would find that placing appellant in this untenable position was tantamount to forcing her to testify against herself. Because appellant's choice to testify was a substantial right, I would find that it is unjust to employ the harmless standard.

{¶ 44} I would reverse the conviction and remand the matter for a new trial.