[Cite as *State v. Culbertson*, 2020-Ohio-903.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 2018CA00183 |
| | : | |
| AARON CULBERTSON | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Stark County Court of Common Pleas, Case No. 2018CR0472


JUDGMENT:      AFFIRMED


DATE OF JUDGMENT ENTRY:      March 9, 2020


APPEARANCES:

For Plaintiff-Appellee:

JOHN D. FERRERO, JR.
STARK CO. PROSECUTOR
KATHLEEN O. TATARSKY
110 Central Plaza S., Ste. 510
Canton, OH 44702-1413

For Defendant-Appellant:

TIMOTHY B. HACKETT
ASST. STATE PUBLIC DEFENDER
250 East Broad St., Ste.1400
Columbus, OH 43215

*Delaney, J.*

{¶1}  Appellant Aaron Culbertson appeals from the November 27, 2018 Judgment Entry of the Stark County Court of Common Pleas.  Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2}  The following facts are adduced from the record of appellant's jury trial.

{¶3}  This case arose on February 2, 2018, when Jane Doe was robbed by two men in broad daylight on her way into a pub on West Tuscarawas Street in Canton, Ohio.

{¶4}  Around 2:45 p.m., Doe arrived at the pub for a family birthday party.  Unable to find a space in the parking lot, Doe parked along a side street and exited her vehicle.  She placed her keys in a small cloth purse, along with her cell phone.  Doe noticed two people walk around the corner toward her from the front of the pub.  She turned her back briefly to make sure her car was locked.

{¶5}  As Doe turned to approach the pub, her head was down and she was startled when someone yelled "give us your fucking purse."  The two people were now directly in front of her, and one of them held a black pistol 8 to 12 inches from her face.  Doe described the individuals as two young black males, one wearing a black hoodie with a Nike "swish" (*sic*) on it and the other wearing a "camo" hoodie.  Both hoodies were drawn over the men's heads and tightly around their faces.  The man in the black hoodie held the pistol and the man in the camo hoodie demanded her purse.  Doe had a clear view of the face of the first man and she thrust her purse toward him.  The second man ran off when the first man brandished the pistol.

{¶6}   The man in the black hoodie ran toward an alley behind the pub.  Doe continued into the pub, dazed, and told her boyfriend (who was waiting inside) that she had just been held up at gunpoint.  The boyfriend told someone to call 911.

{¶7}   Police were on the scene within 15 to 20 minutes.  Doe told police what happened: two men approached her, one of them pulled a gun, pointed it at her, and took her purse.  She believed the men to be black and they wore hoodies with the hoods pulled tight around their faces.

{¶8}   Detective Pierson arrived on the scene to investigate and began by speaking to Doe.  Doe provided a description of the two men: taller than her, skinny, hoodies tight around their faces, possibly wearing gloves.  Pierson learned the pub had a video surveillance system with cameras in the front and back alley.  Although he did not immediately obtain a copy of the video itself, he captured still images from the video and showed them to Doe.  She identified the individual in the black Nike "swish" hoodie as the person who pointed the gun at her.

{¶9}   Doe later identified appellant at trial as the man in the black "swish" hoodie who robbed her at gunpoint.

{¶10} Doe's daughter used the "Find My Phone" feature on her mother's iPhone to locate the stolen phone.  The daughter created a screen shot indicating Doe's phone in the vicinity of 11th Street and Fulton Northwest.  Pierson went to the location and recovered Doe's purse, along with its contents.  The purse, keys, and phone were returned to Doe.  The location of the items was later found to be close to the home of appellant's girlfriend.

{¶11} Pierson turned over the investigation to Detective Terry Monter, who obtained the surveillance video from the pub. Monter cropped photos of the suspects from the videos and worked on identifying the suspects.

{¶12} Monter's investigation and the steps he took to identify appellant were detailed at the juvenile bindover hearing, but not at trial. At the bindover, appellee introduced evidence that Monter believed the suspects might be juveniles and put out a BOLO ("be on the lookout") alert. Monter spoke to a juvenile detective who linked him with Aaron Culbertson, Sr., appellant's father. Appellant had been reported as a runaway. Culbertson, Sr. immediately identified his son in the cropped image taken from the pub surveillance video.

{¶13} An arrest warrant was issued and appellant was eventually apprehended. At the time of the robbery, he had been staying at the residence of Chris and Jennifer Blubaugh, about 7 blocks away from the site of the robbery. During an interview, appellant viewed the surveillance video, including a photo of the suspect of the male wearing the black hoodie running in the alley behind the pub, a black pistol visible in his right hand and a purse in his left hand. Appellant acknowledged the individual looked like him but insisted it was not him.

{¶14} The pistol and the black hooded "swish" sweatshirt were not found.

{¶15} At trial, appellant and his girlfriend Raven Owens testified that on the day of the robbery, they were together and went to Katana and Wal-Mart. Appellant had no explanation why he did not provide the alibi to Monter at the time of his arrest and interview.

{¶16} Appellant was initially charged as a juvenile with engaging in conduct that if committed by an adult would be aggravated robbery in violation of R.C. 2911.01(A)(1). The juvenile complaint alleged appellant brandished a firearm, approached Doe outside the pub, and took her purse. Appellee filed a motion to transfer appellant to the general division of the Common Pleas Court to be tried as an adult.

{¶17} Counsel was appointed for appellant and discovery was requested. On February 27, 2018, appellee responded to the discovery request with 34 pages of police reports and photographs from the surveillance videos at the pub.

{¶18} The matter proceeded to hearing before the juvenile court on March 14, 2018. Appellant was represented by counsel and his father was present. Appellee presented three witnesses including Doe and two Canton Police detectives. Doe identified appellant as the person who robbed her and described what he was wearing as a black hoodie with a "swish."

{¶19} Appellant's father testified on his behalf.

{¶20} The juvenile court found appellant was 16 years old at the time of the offense and there was probable cause to believe he committed the armed robbery alleged in the complaint. The matter was therefore transferred to the general division of the Stark County Court of Common Pleas.

{¶21} Appellant was charged by indictment with one count of aggravated robbery pursuant to R.C. 2911.01(A)(1), a felony of the first degree. Appellant entered a plea of not guilty and was represented by the same defense counsel. Counsel again requested discovery and appellee responded on May 8, 2018.

{¶22} On June 1, 2018, appellant filed a notice of alibi indicating his intention to call two alibi witnesses.

{¶23} The matter proceeded to trial by jury. Prior to voir dire, the trial court granted appellant' motion in limine to exclude evidence of his criminal history. Appellant also moved to exclude the audio of his interview with law enforcement and to exclude evidence that Culbertson, Sr. identified appellant in the surveillance photos. The trial court granted both motions. Appellant moved for judgment of acquittal pursuant to Crim.R. 29(A) at the close of appellee's evidence and at the close of all of the evidence; the motions were overruled.

{¶24} Appellant was found guilty as charged and the trial court imposed a prison term of 8 years. Appellant now appeals from the judgment entries of his conviction and sentence.

{¶25} Appellant raises seven assignments of error:

## ASSIGNMENTS OF ERROR

{¶26} "I. THE STATE VIOLATED AARON CULBERTSON'S RIGHT TO DUE PROCESS AND A FAIR HEARING WHEN IT FAILED TO DISCLOSED ALL MATERIAL EVIDENCE IN ITS POSSESSION PRIOR TO AARON'S MANDATORY BINDOVER HEARING."

{¶27} "II. AARON WAS DEPRIVED OF HIS RIGHT TO DUE PROCESS AND A FAIR HEARING BECAUSE THE JUVENILE COURT'S PROBABLE CAUSE DETERMINATION WAS PREMISED UPON A VAGUE, SUGGESTIVE, AND UNRELIABLE IN-COURT IDENTIFICATION, IN VIOLATION OF THE FIFTH AND

FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION; ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION."

{¶28} "III.  AARON WAS DEPRIVED OF HIS RIGHT TO DUE PROCESS AND A FAIR TRIAL, BECAUSE THE JURY'S VERDICT WAS PREMISED ON A VAGUE, SUGGESTIVE, AND UNRELIABLE IN-COURT IDENTIFICATION, WHICH WAS UNDULY PREJUDICIAL AND ARTIFICIALLY INFLATED BY A PRIOR UNCONSTITUTIONAL IDENTIFICATION."

{¶29} "IV.  AARON WAS DEPRIVED OF HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL BEFORE TRIAL, IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION; AND, ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION."

{¶30} "V.  THE JUVENILE COURT ERRED AS A MATTER OF LAW WHEN IT DENIED AARON CULBERTSON'S MOTION TO DISMISS FOR LACK OF PROBABLE CAUSE; AND ITS PROBABLE CAUSE DETERMINATION WAS AGAINST THE SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE, IN VIOLATION OF [THE] FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION; AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION."

{¶31} "VI.  THE TRIAL COURT ERRED WHEN IT DENIED AARON CULBERTSON'S CRIM.R. 29 MOTION FOR ACQUITTAL AND ENTERED A CRIMINAL CONVICTION WHERE THE JURY'S VERDICT WAS AGAINST THE SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE, IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION; AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION."

{¶32} "VII.   THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT FAILED TO CALCULATE AND AWARD AARON CREDIT FOR THE FULL AMOUNT OF TIME HE SPENT DETAINED AWAITING TRANSFER TO ADULT COURT, IN VIOLATION OF R.C. 2967.191."

**ANALYSIS**

I.

{¶33} In his first assignment of error, appellant argues appellee failed to disclose material evidence prior to the mandatory bindover hearing, thereby denying his right to due process and a fair hearing.  We disagree.

{¶34} Juv.R. 24 applies in bindover hearings. *In re D.M.*, 140 Ohio St.3d 309, 2014-Ohio-3628, 18 N.E.3d 404, ¶ 16.  A prosecuting attorney is under a duty imposed by Juv.R. 24(A)(6) and the Due Process Clauses of the Ohio Constitution and the United States Constitution to disclose to a juvenile respondent all evidence in the state's possession that is favorable to the juvenile and material to either guilt, innocence, or punishment. *Id.*  Appellant asserts that at the bindover stage, appellee failed to "provide access to information possessed by the state that might tend to disprove probable cause at the bindover stage." Brief, 6.  Appellant specifically asserts that the surveillance photos and videos from the pub were not provided to defense counsel, despite a timely request. This argument seems to be premised upon defense trial counsel's closing argument that he did not have access to an unidentified video withheld by appellee and statements by unidentified witnesses, including audio recordings.  There is no proffer made or description of what evidence was purportedly withheld.  It is not evident from the record that the closing argument referenced by appellant is not mere speculation that there is

additional evidence not shared by the police, instead of an accusation that specific evidence was withheld.

{¶35} This distinction is important because, as appellee points out, the record does demonstrate that on February 20, 2018, defense trial counsel requested discovery pursuant to Juv.R. 24 and Crim.R.16 and appellee filed a response seven days later. The response of 34 pages contains the names and addresses of twenty witnesses, and states that audio recordings, appellant's recorded statement, and still photos from the pub videos are available to counsel. Any disparity between the evidence cited in appellee's discovery response and the evidence appellant now claims to have been withheld is not described for us.

{¶36} The record indicates appellant failed to preserve the claim that discovery materials were withheld or to demonstrate he was harmed. Juv.R. 24 generally provides for discovery; pursuant to Juv.R. 24(B), if a request for discovery is refused, application may be made to the court for a written order granting the discovery. If no response is forthcoming, the requesting party must timely move to compel discovery.

{¶37} It is not evident from the record before us that appellee failed to disclose all material evidence prior to the bindover hearing. Appellant's counsel requested discovery, and there is nothing showing that the state failed to comply with the request. See, *State v. Figueroa*, 11th Dist. Trumbull No. 2018-T-0071, 2019-Ohio-3151, ¶ 12, appeal not allowed*, 157 Ohio St.3d 1496, 2019-Ohio-4840, 134 N.E.3d 1215. Appellant's argument is silent as to appellee's discovery response of February 7, 2018. The criminal and juvenile rules do not require the state to file written discovery responses with the clerk of courts. *See, id*. The trial court does not generally oversee discovery unless a party brings

a discovery issue to the court's attention via motion. *Id.*, citing Crim.R. 16(A). **"Crim.R. 16(A)** intends a two-step discovery procedure. The party wishing to obtain information must first request it in writing from the other party. Upon an insufficient response, the requesting party must then timely move to compel discovery, certifying the original request and lack of proper response." *Id.*, citing *City of Toledo v. Jackson*, 6th Dist. Lucas No. L-94-282, 1996 WL 139481, *2, citing *State v. Hicks*, 48 Ohio App.2d 135, 356 N.E.2d 319 (8th Dist.1976).

{¶38} Generally, a defendant's due process right to a fair trial is violated when the prosecution withholds exculpatory evidence in a criminal proceeding. *State v. Brady*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). A due process claim under *Brady* cannot be maintained in the absence of a showing of prejudice, i.e*.,* that the government's action deprived the accused of evidence that was favorable and material. *United States v. Valenzuela-Bernal* , 458 U.S. 585, 102 S.Ct. 3440 (1982). Appellant's argument here speculates as to the existence of other evidence and the effect any such evidence would have had on the bindover proceeding. The argument is not supported by any documentary evidence to bolster what is purely speculation that the prosecution possessed material that was not provided to the defense during discovery.

{¶39} In the instant case, we find appellant's argument insufficient to overcome the evidence in the record that appellee timely responded to appellant's discovery request at the trial level. Appellant's first assignment of error is thus overruled.

II., III.

{¶40} Appellant's second and third assignments of error are related and will be considered together. Appellant challenges his in-court identifications by Doe at the bindover hearing and at trial.

{¶41} At the bindover hearing, Doe unequivocally identified appellant in the courtroom as the person wearing the black "swish" hoodie who robbed her. Upon direct examination, Doe *also* identified appellant as the suspect in the photographs taken from the surveillance videos. This distinction is significant because appellant implies that the detectives' actions in showing her the photos from the surveillance video was unduly suggestive and tainted her subsequent in-court identifications. Appellant thus concludes Doe's in-court identifications are not based upon her own independent recollection. We find this string of inferences is not supported by the record.

{¶42} Appellant further implies that at trial, Doe was able to identify appellant in the courtroom only because "someone showed [her] a picture after it happened" and because appellant "was the only African-American boy in the courtroom" sitting next to defense counsel.

{¶43} First, appellant's argument ignores Doe's testimony that she did get a good enough look at the person who robbed her to be able to identify him later. She could see his face despite the hoodie pulled around it. T. Bindover, 10. She knew the suspects in the photo were the two men who robbed her as soon as she was shown the photo. T. Bindover, 12. She got a clear look at the face of the suspect in the black swish hoodie. T. Trial, 171. She is certain of her identification of appellant because she recognizes his eyes and eyebrows and was focused on his face. T. Trial, 179-180.

{¶44} Second, appellant's argument ignores the quality of appellee's other evidence of identity.  The robbery happened in broad daylight and was reported immediately; police were on the scene quickly and able to pull an unusually good surveillance video.  The resulting photos of the two suspects in hoodies coming around the corner of the pub immediately prior to the robbery [State's Ex. 2A and 2B] are distinct enough that someone who had never seen either man before would be able to recognize them again.  The photos of the man in the swish hoodie running with a gun in one hand, purse in the other, is equally compelling [State's Ex. 2E, 2F, 2G].

{¶45} Having reviewed the evidence, we turn now to appellant's arguments that Doe's in-court identifications were unreliable.  Each case involving the issue of pre-trial identification must be considered on the totality of the circumstances, *Simmons v. United States*, 390 U.S. 377 (1968). The reviewing court should consider first whether the pre-trial procedure was unnecessarily suggestive, and then determine whether the identification itself is reliable, because reliability is a "linchpin in determining the admissibility of identification testimony," *Manson v. Brathwaite*, 432 U.S. 98 (1977).  In the instant case, there was no pretrial identification procedure other than Doe viewing the photos and indicating the suspect in the "swish" hoodie had the gun and took her purse.

{¶46} The same factors which are used in testing the reliability of a pretrial identification are used in determining whether or not the in-court identification was of an independent origin. The factors affecting reliability include: the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the

confrontation. *State v. Sutton*, 5th Dist. Licking No. CA-3636, 1991 WL 261972, *1, citing *State v. Moody*, 55 Ohio St.2d 64 (1978), and *Neil v. Biggers*, 409 U.S. 188 (1972).

{¶47} In *State v. Jackson*, 26 Ohio St.2d 74, 269 N.E.2d 118 (1971), the Ohio Supreme Court explained that in determining the admissibility of an in-court identification, trial courts should consider whether the in-court identification was a product of an improper pretrial identification procedure or whether the in-court identification "came from some independent recollection and observation of the accused by the witness." *Id.* at 77.

{¶48} We do not assume Doe identified appellant solely because he was seated at the defense table.  An in-court identification typically occurs under circumstances that suggest the identity of the defendant. *State v. Johnson,* 163 Ohio App.3d 132, 2005-Ohio-4243, 836 N.E.2d 1243, ¶ 55.

{¶49} There was not a pretrial identification procedure such as a photo array or show-up wherein Doe selected appellant as the robber. Police showed her the surveillance photo and she identified the suspect who robbed her.   The record reflects that Doe's in-court identifications were based on her own observations and memory. Based on Doe's account of the incident, we find that she had sufficient opportunity to view the robber during the incident.  The man wore a black swish hoodie pulled around his face, but his face was still visible.  She told police about the swish hoodie before she saw the photo; the description was not suggested to her.   She was "positive" in her identification of appellant because she remembered his face.  T. Trial, 192-196.  Doe's in-court identifications were made under oath and subject to cross-examination. On cross-examination, defense counsel was able to elicit testimony regarding Doe's shock during

the incident and her focus on the gun.  Furthermore, defense counsel was able to challenge her recollection of the incident.

{¶50} Based on the foregoing analysis, we find Doe had a reliable and independent basis for the identification based on her prior independent observations of the suspect at the scene of the crime. We do not find that Doe's in-court identifications denied appellant his right to a fair trial.  In *Johnson,* supra, 163 Ohio App.3d 132, 2005-Ohio-4243, 836 N.E.2d 1243, ¶ 55, the court noted several factors indicating the identification was not unreliable: there were no suggestive out-of-court procedures that could have invalidated the in-court identification; the witness made her identification in court and under oath and was subject to cross-examination; the witness testified that she had observed the suspect for over a minute and during much of that time, she was standing within a few feet of him and staring at his eyes; and the witness was confident in her identification and the testimony of other witnesses revealed her certainty in her identification. All of those factors are present in the instant case.  See, *State v. Monford*, 190 Ohio App.3d 35, 2010-Ohio-4732, 940 N.E.2d 634 (10th Dist.)

{¶51} We therefore find no merit in appellant's contention that Doe's in-court identifications were tainted by her viewing of the photos from the surveillance video.  We find her identifications were based upon her own independent recollection of the events. Appellant's second and third assignments of error are overruled.

IV.

{¶52} In his fourth assignment of error, appellant argues he received ineffective assistance of defense trial counsel.  We disagree.

{¶53} To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. *See, Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id.* at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158 (1955).

{¶54} "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland,* 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690.

{¶55} Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

{¶56} Appellant argues that Doe's allegedly unreliable in-court identification at the bindover hearing should have alerted defense counsel to the necessity of filing a motion to suppress, although appellant does not specify what the basis for such a motion would have been.  Appellant asserts summarily a motion to suppress would have changed the outcome of the proceeding.  Brief, 20.

{¶57} We generally decline to evaluate this fact-specific issue on the trial record alone; thus, is the dilemma of every appellant attempting to establish ineffective assistance for failing to file a motion to suppress. In the case of *State v. Parkinson,* Stark App. No.1995CA00208, unreported, (May 20, 1996) at 3, we observed that when counsel fails to file a motion to suppress, the record developed at trial is generally inadequate to determine the validity of the suppression motion. This reasoning is applicable to the case sub judice because based on the record, it is unclear whether a suppression motion would have been successful. *State v. Culbertson,* 5th Dist. Stark No.2000CA00129, 2000 WL 1701230, *4 (Nov. 13, 2000) See also, *State v. Hoover,* 5th Dist. Stark No.2001CA00138, 2001–Ohio–1964. Furthermore, we must presume a properly licensed attorney executes his or her duties in an ethical and competent manner. See *State v. Smith,* 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985).

{¶58} In the instant case, we are unwilling to find ineffective assistance of counsel when we have already concluded supra that Doe's identifications of appellant were not fatally flawed. Particularly in light of our conclusions, supra, that Doe's in-court identifications were not unreliable, we decline to find ineffective assistance of counsel. Appellant's fourth assignment of error is overruled.

## V., VI.

{¶59} Appellant's fifth and sixth assignments of error are related and will be considered together. Appellant again challenges the sufficiency of Doe's identification of appellant, arguing that her identification is insufficient to find probable cause to bind appellant over to the general division, and to support his conviction for aggravated robbery. We disagree.

*Review of juvenile-court probable cause determination*

{¶60} In a bindover hearing, "the state must provide credible evidence of every element of an offense to support a finding that probable cause exists to believe that the juvenile committed the offense before ordering mandatory waiver of juvenile court jurisdiction pursuant to R.C. 2151.26(B) [now R.C. 2152.12(A)(1)(a) ]. * * * In meeting this standard the state must produce evidence that raises more than a mere suspicion of guilt, but need not provide evidence proving guilt beyond a reasonable doubt." *State v. Iacona,* 93 Ohio St.3d 83, 93, 2001-Ohio-1292, 752 N.E.2d 937. In determining the existence of probable cause the juvenile court must evaluate the quality of the evidence presented by the state in support of probable cause as well as any evidence presented by the respondent that attacks probable cause. *Id.,* citing *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). Determination of the merits of the competing prosecution and defense theories, both of which [are ] credible, ultimately [is ] a matter for the factfinder at trial.  *Id.* at 96.

{¶61} It is well settled that "'[t]he trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *State v. Amburgey*, 33 Ohio St.3d 115, 117, 515 N.E.2d 925 (1987), quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Therefore, we defer to the trial court's discretion in these matters. *Id.*

{¶62} The state must present credible evidence of every element of an offense to support a finding of probable cause, but that evidence does not have to be unassailable. *Iacona,* 93 Ohio St.3d at 93 and 95.

{¶63} Following these lines of analysis, a juvenile court's probable-cause determination in a mandatory-bindover proceeding involves questions of both fact and law, and thus, we defer to the trial court's determinations regarding witness credibility, but we review de novo the legal conclusion whether the state presented sufficient evidence to demonstrate probable cause to believe that the juvenile committed the acts charged.

*Manifest weight and sufficiency of the evidence at trial*

{¶64} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins,* 78 Ohio St.3d 380, 1997–Ohio–52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶65} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins,* supra, 78 Ohio St.3d at 387,

678 N.E.2d 541. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶66} It is well-established, though, that the weight of the evidence and the credibility of the witnesses are determined by the trier of fact. *State v. Yarbrough,* 95 Ohio St.3d 227, 2002–Ohio–2126, 767 N.E.2d 216, ¶ 79. The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "'While the [factfinder] may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence.'" *State v. Naugle,* 182 Ohio App.3d 593, 2009–Ohio–3268, 913 N.E.2d 1052, ¶ 20 (5th Dist.), citing *State v. Craig,* 10th Dist. Franklin No. 99AP–739, 2000 WL 297252 (Mar. 23, 2000), *3. Jurors may accept only portions of a witness's testimony as true and may reject the rest. *Id.,* citing *State v. Raver,* 10th Dist. Franklin No. 02AP–604, 2003–Ohio–958, ¶ 21.

*Sufficiency of evidence of identification*

{¶67} Appellant argues that the juvenile court erred in finding probable cause, and the jury erred in finding him guilty of aggravated robbery, because Doe's identification of him as the robber was insufficient and there was no physical evidence tying him to the offense. We have exhaustively reviewed the evidence of Doe's identification of appellant. Any type of direct or circumstantial evidence may be utilized to establish the identity of the perpetrator of a crime. *State v. Tyo*, 5th Dist. Stark No. 2016CA00223, 2018-Ohio-1374, ¶ 11, citing *State v. Bridge,* 60 Ohio App.3d 76, 77, 573 N.E.2d 762 (6th Dist.1989). At the bindover hearing and at trial, Doe described the robbery in broad daylight and her

identification of appellant as the man in the "swish" hoodie. Investigators were able to pull up a distinct surveillance video immediately, showing the two men described by Doe, including the man in the "swish" hoodie running away with a pistol in one hand and Doe's purse in the other. Doe identified appellant in court at the bindover hearing and at trial as the man who pointed the gun at her and took her purse. Appellant argues that at trial, the detective's testimony about how appellant was identified as the suspect was "obtuse," ignoring the fact that his own motion in limine resulted in exclusion of the evidence of appellant's father identifying him on the surveillance photo.

{¶68} It is axiomatic that the testimony of one witness is sufficient to sustain a conviction. It lies within the province of the trier of fact, the trial court sub judice, to determine the credibility of all the witnesses. *State v. Ehlermann*, 5th Dist. Licking No. 2005CA00130, 2006-Ohio-3931, ¶ 9, citing *Jamison*, supra, 49 Ohio St.3d 182.

{¶69} The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witnesses' credibility. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Johnson*, 5th Dist. Stark No. 2014CA00189, 2015–Ohio–3113, 41 N.E.3d 104, ¶ 61, citing *State v. Nivens*, 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). The jury need not believe all of a witness' testimony, but may accept only portions of it as true. *Id.*

{¶70} In the instant case, appellant's arguments again overlook the compelling evidence of the surveillance videos and the circumstantial evidence that appellant was staying a few blocks away from the pub at the time of the robbery. We further note that

the finder of fact could reasonably reject the self-serving testimony of appellant and his girlfriend about their purported shopping trip at the time of the robbery.

{¶71} Construing all of the evidence in favor of appellee, sufficient evidence supports appellant's conviction and the juvenile court's finding of probable cause. This is not the case in which the jury clearly lost its way and created such a manifest miscarriage of justice that the convictions must be overturned and a new trial ordered.   Here, the jury heard the witnesses, evaluated the evidence, and was convinced of appellant's guilt. Doe unequivocally identified appellant as the person who robbed her. Upon our review of the record, we find appellant's assault convictions are supported by sufficient evidence and are not against the manifest weight of the evidence.

{¶72} Appellant's fifth and sixth assignments of error are overruled.

VII.

{¶73} In his seventh assignment of error, appellant argues the trial court erred in failing to credit him with the time spent at the Juvenile Attention Center awaiting disposition of the probable cause hearing.  We disagree.

{¶74} A juvenile is to receive credit for time he or she was "confined in connection with the delinquent child complaint upon which the order of commitment is based." *In re D.S.*, 148 Ohio St.3d 390, 2016-Ohio-7369, 71 N.E.3d 223, ¶ 15, citing R.C. 2152.18(B). In the instant case, appellant's predisposition confinement was not based solely upon the aggravated robbery.  On February 7, 2018, appellant was also charged in an unrelated matter of receiving stolen property and remanded to the Juvenile Attention Center on February 15, 2018.  Appellant's Brief, Appx. A-1.

{¶75} We therefore agree with appellee that because appellant was no confined solely in connection with the delinquency complaint charging him with aggravated robbery, he is not entitled to credit for the time spent in the Juvenile Attention Center prior to disposition.

{¶76} Appellant's seventh assignment of error is overruled.

## CONCLUSION

{¶77} Appellant's seven assignments of error are overruled and the judgment of the Stark County Court of Common Pleas is affirmed.

By:  Delaney, J.,

Hoffman, P.J. and

Wise, John, J., concur.