[Cite as *State v. Nettles*, 2019-Ohio-3682.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-180535 |
| | | TRIAL NO. 18CRB-12165 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| JOSHUA NETTLES, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  September 13, 2019

*Paula Boggs Muething,* City Solicitor, *Natalia Harris*, City Prosecutor, and *Ashley Melson*, Assistant City Prosecutor, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Krista Gieske,* Assistant Public Defender, for Defendant-Appellant.

CROUSE, **Judge.**

{¶1}   Defendant-appellant Joshua Nettles appeals from the municipal court's judgment finding him guilty of assault and sentencing him to 90 days' incarceration.

{¶2}   In two assignments of error, Nettles argues that his conviction was against the manifest weight of the evidence and the trial court prejudicially limited his right to cross-examine the state's prosecuting witness. For the following reasons, we overrule both assignments of error and affirm the judgment of the trial court.

### *Factual Background and Procedural Posture*

{¶3}   Joshua Nettles and Erica Jackson have a four-year-old son named J.J. Nettles and Jackson have not been romantically involved for several years. During the time relevant to this appeal, J.J. spent every weekend with Nettles's parents, Patricia Collier and Albert Beecher.

{¶4}   On May 15, 2018, Jackson took J.J. to Collier and Beecher's home for his weekend stay. When Jackson and J.J. arrived at the residence, Collier and Jackson got into a physical altercation in the front yard. Shortly thereafter, Nettles and his girlfriend, Shawnay Glover, drove up and saw the altercation.

{¶5}   At trial, Jackson testified that Nettles "grabbed [her] by [her] throat and yanked [her] down to the ground." She continued, "He begins to stomp me. * * * He kicked me in the face with his shoe." Jackson then testified that Nettles told Glover to "get on top of her and beat her ass." According to Jackson, Glover sat on Jackson's shoulders and began beating her in the head while Jackson was face down on the ground. Jackson was eventually able to grab Glover's "privates," at which point Jackson believed Nettles bit her before pulling Glover off of her. Once Glover

2

was removed from Jackson's back, Jackson jumped up, grabbed J.J., walked up the street, and called 911.

{¶6}   Officer Pitts was the first to respond to the Collier and Beecher residence.  Upon his arrival, Pitts spoke with Beecher about the incident.  Beecher told Pitts that he yelled for Jackson and Glover not to fight in front of the children, and then took the children to the front porch.  At trial, however, Beecher testified that Nettles was the one who asked Jackson and Glover not to fight and took the children to the front porch.  According to Beecher, the fight continued for three to four minutes before he and Nettles broke up the fight.

{¶7}   Pitts testified that was unable to talk to Collier, Nettles, or Glover the night of the incident.  According to Pitts, Nettles and Glover left shortly after his arrival, and Collier was too intoxicated and disorderly.  After attempting to speak with Collier, Pitts was called to Jackson's location.  Pitts found Jackson approximately three or four blocks away from the Collier and Beecher residence.  Pitts immediately observed several bruises on Jackson's face and cuts on the left side of her head.  He also noted markings around her throat and on her chest.  When asked what happened, Jackson told Pitts that Nettles pushed her to the ground and kicked her in the face.

{¶8}   After talking to Jackson, Pitts returned to the Collier and Beecher residence, where he was "flagged down" by a neighbor, Karen Caldwell.  In her statement to Pitts, Caldwell described seeing Nettles kick Jackson and pull Glover off of Jackson.  At trial, however, Caldwell testified on behalf of Nettles.  She described seeing only the altercation between Collier and Jackson, stating that she never saw Nettles at the scene.

{¶9} The trial court disregarded Karen Caldwell's testimony, and found that Nettles struck Jackson in the face and then held her down while Glover beat her. Based on these facts, the court found Nettles guilty of assault in violation of R.C. 2903.13(A) and not guilty of domestic violence in violation of R.C. 2919.25. Nettles was sentenced to 90 days' incarceration.

### *Law and Analysis*

#### 1. First Assignment of Error

{¶10} In his first assignment of error, Nettles argues that his conviction is against the manifest weight of the evidence.

{¶11} To reverse a conviction on the manifest weight of the evidence, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice in finding the defendant guilty. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997). When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. *Tibbs v. Florida,* 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶12} The court found Nettles guilty of assault in violation of R.C. 2903.13(A). R.C. 2903.13(A) provides: "No person shall knowingly cause or attempt

to cause physical harm to another or to another's unborn." "Physical harm to persons means any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

{¶13} Nettles argues that the weight of the evidence shows that Glover, not Nettles, caused Jackson's injuries. Nettles does not take issue with the court's determination that Caldwell was not a credible witness. Rather, he contends that Jackson was also not a credible witness for several reasons, including (1) Jackson could not see what was happening to her as she was pinned down, (2) Jackson's description of being held down by Nettles and kicked at the same time was not possible, and (3) Jackson embellished the severity of her injuries, some of which were not visible in the photographs presented at trial.

{¶14} As the trier of fact, the trial court listened to the witnesses, assessed their credibility, and ultimately found Jackson's testimony credible. Jackson's testimony was substantially consistent with what she told Pitts the night of the altercation. On both occasions, she stated that Nettles grabbed her by the throat, slammed her on the ground, and kicked her with his right foot.

{¶15} Pitts's testimony largely corroborated Jackson's testimony. Pitts testified that he observed several bruises and cuts on Jackson's face and head when he saw her minutes after the assault. Pitts photographed Jackson's injuries, and those photographs were introduced into evidence at trial. The trial court was able to view the photographs and draw any conclusions as to Jackson's credibility. For instance, one of the photographs revealed a mark on Jackson's throat which further corroborated Jackson's version of events.

{¶16}  Beecher was the only eyewitness other than Caldwell and Jackson to testify.  At trial, Beecher testified in direct contradiction to what he told Pitts the night of the incident.  Therefore, it was reasonable for the trial court to find that Beecher was not a credible witness.

{¶17}  In *State v. Saunders*, 1st Dist. Hamilton No. C-160781, 2017-Ohio-8557, this court dealt with the issue of witness credibility.  This court noted that, "It is well settled law that matters as to the credibility of witnesses are for the trier of fact to resolve." *Id.* at ¶ 9, citing *State v. Railey*, 2012-Ohio-4233, 977 N.E.2d 703, ¶ 14 (1st Dist.).  "We may consider the credibility of the witnesses, yet we are guided by the presumption that the trial court in a bench trial, 'is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible.' " *Id.* at ¶ 9, citing *State v. Strider-Williams*, 10th Dist. Franklin No. 10AP-334, 2010-Ohio-6179, ¶ 13.  A reviewing court must give great deference to the factual findings of the judge regarding the credibility of the witnesses. *Id.*  We note that reversing a conviction as being against the manifest weight of the evidence should be reserved for only the most "exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983), paragraph three of the syllabus.  This is not such a case.

{¶18}  After reviewing the record, we cannot conclude that the trial court lost its way in evaluating the credibility of Jackson and Pitts.  Therefore, because the trial court did not create a manifest miscarriage of justice, Nettles's first assignment of error is overruled.

## 2. Second Assignment of Error

{¶19} In his second assignment of error, Nettles contends the trial court prejudicially limited his right to cross-examine Jackson when it sustained an objection to defense counsel's question exploring Jackson's role in catalyzing the altercation. Specifically, Nettles argues that defense counsel could have elicited more of Jackson's prior instances of aggression if he had been permitted to continue questioning her.

{¶20} On cross-examination, defense counsel asked Jackson whether she was charged for assault of Collier. Jackson responded, "Yes." Defense counsel then asked, "So the initial altercation is a two-way street. The police charged you as well as her, correct?" Jackson responded, "No, I asked for her to be charged and they told me —." The prosecutor immediately objected stating, "I don't think the relevance of the police's decision to charge or not charge her in a case that is not really related. It's not relevant." The court sustained the objection, finding the issue irrelevant and duplicative.

{¶21} Cross-examination of a witness is a matter of right, but the "extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court." *State v. Green,* 66 Ohio St.3d 141, 147, 609 N.E.2d 1253 (1993), citing *Alford v. United States*, 282 U.S. 687, 691 and 694, 51 S.Ct. 218, 75 L.Ed. 624 (1931). The fact that Jackson was also charged with assault was in evidence repeatedly, and asking the question again was duplicative. Furthermore, defense counsel did not attempt to question Jackson about the tumultuous history between Nettles and Jackson, despite an extensive cross-examination. Counsel also did not attempt to proffer any such questions after the

trial court sustained the state's objection. Under these circumstances, Nettles has not established that the trial court abused its discretion in limiting his cross-examination of Jackson. Nettles's second assignment of error is overruled.

### *Conclusion*

{¶22} For the foregoing reasons, Nettles's two assignments of error are overruled and the judgment of the trial court is affirmed.

Judgment affirmed.

MOCK, P.J., and ZAYAS, J., concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.