[Cite as *State v. James*, 2022-Ohio-4697.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-210599 |
| | | TRIAL NO.    21CRB-7900 |
| Plaintiff-Appellee, | : | |
| | : | *O P I N I O N.* |
| vs. | | |
| | : | |
| ANTOINE JAMES, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: December 28, 2022

*Emily Smart Woerner*, City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Connor E. Wood*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Krista Gieske*, Assistant Public Defender, for Defendant-Appellant.

**CROUSE, Judge.**

{¶1}    Defendant-appellant Antoine James was found guilty of assault after a trial to the bench. In two assignments of error, James argues that his conviction was against the manifest weight of the evidence and that the trial court erred when it imposed one sentence at the sentencing hearing and a different sentence in the judgment entry. For the reasons set forth below, we overrule both assignments of error and affirm James's conviction.

### I. Procedural History

{¶2}    Following a bench trial, James was found guilty of assault in violation of R.C. 2903.13, a first-degree misdemeanor. At the sentencing hearing, the trial court imposed a sentence of 180 days in jail with 143 days suspended and credit for 39 days served. However, the judgment entry reflects a sentence of 180 days in jail with 143 days suspended and credit for 37 days served. James timely appealed, and the trial court granted a stay of the sentence pending this appeal.

### II. Factual History

{¶3}    On the evening of May 7, 2021, James and other family members were playing cards at the home of James's mother, Stephanie Chappell ("Stephanie"). After James and the others had been playing cards for about two hours, cousins Demetrius Chappell ("Demetrius") and Luke Chappell ("Luke") stopped by uninvited. Luke was driving because Demetrius had been drinking. After arriving, Demetrius entered the house without knocking. He then approached James and insisted that they go outside to discuss a prior incident. Despite James's initial reluctance to go outside with Demetrius, James eventually went out to the front porch with him.

{¶4}    Demetrius testified that he and James went outside with two of their

2

cousins. James and Demetrius talked for a few minutes before the discussion became heated. James swung both fists at Demetrius several times while the two cousins tried to stop him from hitting Demetrius. James ended up striking Demetrius once in the face causing him to fall off the porch. James pursued Demetrius off the porch and into the yard where James began stomping on Demetrius's head. Demetrius testified that he was unable to defend himself because of a prior leg injury. Eventually, the other family members present pulled James off of Demetrius. After the altercation, Demetrius called the police. Demetrius testified that when the responding officers arrived, James retreated into Stephanie's house.

{¶5}   James's version of the events was quite different. He testified that as soon as he came into contact with Demetrius, he noticed that his breath smelled of alcohol and that he was slurring his words. James claimed that, once they were outside on the porch, Demetrius repeatedly smacked James's chest and was talking down to him. James demanded that Demetrius stop touching him and talking to him "like that." James testified that Demetrius then pushed on James's chest hard enough that Demetrius, in his inebriated state, lost his balance and fell off the porch into the yard. Once in the yard, the two squared off against each other and started physically fighting. Demetrius hit James in the neck and tried to grab him. The two rolled around in the yard, fighting, until eventually other family members pulled the two apart. James claimed that everyone went inside the house after the fight and Stephanie sent everyone home before the police arrived. James asserted that he only fought with Demetrius to try to protect himself.

{¶6}   On cross-examination, James admitted that he had been convicted of a felony offense within the last ten years. However, he claimed he could not recall having

3

been convicted of a felony theft offense in March 2019.

{¶7} Officer Brennan Hiatt of the Cincinnati Police Department testified that he went to Stephanie's house on the evening of the altercation in response to a report by a passerby of a fight. While en route to the house, Hiatt received an update that the victim had called in an assault. After arriving at the scene, Hiatt saw Demetrius outside and noticed that he was limping and had a slight bruise and swelling on his cheek. Hiatt also noticed that Demetrius appeared to have been drinking but did not seem drunk. Hiatt talked to Demetrius to get his side of the story. He knocked on the door of the house and asked to speak with James, but the occupants would not let Hiatt see him.

### III. First Assignment of Error

{¶8} In his first assignment of error, James argues that his conviction was against the manifest weight of the evidence. Specifically, he argues that the evidence did not "credibly support" that he knowingly caused or attempted to cause physical harm to Demetrius.

{¶9} When we review a challenge to the manifest weight of the evidence, we must "review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice." *State v. Powell*, 1st Dist. Hamilton No. C-190508, 2020-Ohio-4283, ¶ 16, citing *State v. Thompkins*, 78 Ohio St.3d 380, 388, 678 N.E.2d 541 (1997). We only reverse the conviction and grant a new trial in "exceptional case[s] in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983), paragraph three of the syllabus. "The trier of fact is in the best position to judge the credibility of the witnesses and the weight to

be given to the evidence presented." *State v. Carson*, 1st Dist. Hamilton No. C-180336, 2019-Ohio-4550, ¶ 16, citing *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967).

{¶10} James argues that the trial court's findings are not "credibly supported" by the record and multiple inconsistencies in the record undercut the weight of the state's case. James claims that he and Demetrius were engaged in a mutual altercation, and that the record does not show that James acted with the requisite intent to cause physical harm to Demetrius. James points to the responding officer's initial belief that he was responding to a mutual fight, as reported by passers-by, which was only upgraded to an "assault call" after Demetrius called the police after the altercation ended.

{¶11} The state argues in response that the trial hinged on witness credibility, and the trial court did not lose its way or create a miscarriage of justice in finding that the state's witnesses were more credible than James. We agree.

{¶12} Although Demetrius and James presented differing accounts of the event, the trial court was in the best position to judge their credibility. In rendering its guilty verdict, the trial court twice stated that it found Demetrius to be "very credible." In support of its credibility determination, the court noted James's advantage of not only size, but also youth. The court stated, "the biggest thing for me was the age difference. The age difference, it's a young man versus an old man." The court also noted that Demetrius's description of his injuries after the altercation was confirmed by the investigating officer. Further, the court questioned James's credibility due to his testimony on cross-examination that he did not remember a 2019 conviction involving dishonesty.

5

{¶13} It is primarily for the trier of fact to resolve questions of the credibility of witnesses. *State v. Nettles*, 1st Dist. Hamilton No. C-180535, 2019-Ohio-3682, ¶ 17. The appellate court may consider the credibility of witnesses, but the trial court is in the best position to determine whether witness testimony is credible. *Id.* Here, there is nothing to suggest that the court lost its way by determining Demetrius to be a more credible witness than James, and to credit Demetrius's account of the events.

{¶14} Even if this altercation was, as James asserts, a "mutual fight between two people," this does not suggest in any way that the trier of fact lost its way. We have previously held that mutual consent to fight, other than when in accordance with the statutes authorizing boxing matches, does not relieve the combatants of criminal liability. *State v. Dunham*, 118 Ohio App.3d 724, 693 N.E.2d 1175 (1st Dist.1997), syllabus ("Where two persons agree to fight each other, and the fight is not one contemplated by the statutes authorizing boxing matches, each may be subject to criminal prosecution for assault."). Thus, even if this were a mutual fight, James can still be properly convicted of assault on the evidence adduced at trial.

### IV. Second Assignment of Error

{¶15} In his second assignment of error, James argues that the trial court erred by substantively altering the sentence imposed at the sentencing hearing when it entered a different sentence in its judgment entry. Specifically, James argues that it was error for the trial court to reduce the jail-time credit announced at James's sentencing hearing from 39 days to 37 days outside of his presence and not in open court. While the state agrees this was error, we do not.

{¶16} "The decision whether to credit pretrial confinement days is simply not part of the sentence." *In re D.S.*, 148 Ohio St.3d 390, 2016-Ohio-7369, 71 N.E.3d 223,

¶ 20, quoting *State v. Gregory*, 108 Ohio App.3d 264, 268, 670 N.E.2d 547 (1st Dist.1995). " 'Credit for jail time is not open to tailoring to the individual case in the same sense as sentencing, because once the *sentence has already been rendered*, the remaining calculation is merely a computation of how much time has been served and how much remains.' " (Emphasis sic.) *Id.*, quoting *Gregory* at 268. The calculation of jail-time credit is a "ministerial act that does not involve the use of discretion." *State v. Brewster*, 1st Dist. Hamilton No. C-980484, 1999 Ohio App. LEXIS 1028, 5 (Mar. 19, 1999); *see State v. Weaver*, 1st Dist. Hamilton No. C-050923, 2006-Ohio-5072, ¶ 12.

{¶17} At the sentencing hearing, the court sentenced James to 180 days and suspended 143 of them. This necessarily resulted in giving him credit for 37 days that he spent in jail. Clearly the trial judge misspoke when she said that James would receive 39 days' credit. The judgment entry reflects the exact sentence that was imposed at the sentencing hearing and the correct amount of jail-time credit. Because jail-time credit is a ministerial act and not part of the sentence, the trial court did not err when it included the correct amount of jail-time credit in its sentencing entry despite the fact that it misstated the days of credit at the sentencing hearing.

{¶18} Certainly, case law allows a defendant to appeal a trial court's calculation of jail-time credit. *State v. Price*, 4th Dist. Athens Nos. 19CA14, 19CA16 and 19CA18, 2020-Ohio-6702, ¶ 22. Such arguments are not waived if not raised in the trial court. *Id.* But the defendant must demonstrate on appeal that the court's calculation was not supported by competent, credible evidence. *Id.*

{¶19} James does not argue that he actually spent 39 days in jail and therefore the trial court erred in calculating that he was entitled to 37 days credit. Rather, James

argues that the trial court erred in reducing the jail-time credit by two days in the sentencing entry outside of his presence. In his appellate brief James states, "[w]hat is not discernable from the record is whether the trial court properly reduced jailtime credit to which [James] was entitled by two days." But as discussed above, the trial court did not "reduce" his jail-time credit. By suspending 143 days of the 180-day sentence, the trial court effectively calculated 37 days of credit at the sentencing hearing. There is nothing in the record to show that the trial court's calculation of 37 days' credit was in error.

{¶20} Accordingly, because the judgment entry correctly reflected the sentenced imposed at the sentencing hearing, the second assignment of error is overruled.

### *V. Conclusion*

{¶21} For the foregoing reasons, we overrule both of James's assignments of error and affirm the judgment of the trial court.

Judgment affirmed.

**BERGERON, P.J.**, and **WINKLER, J.**, concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.

8